299 So.2d 743

**In re Herbert HAGER**

v.

**Clotyle S. HAGER (Stead).**
**Ex parte Clotyle S. Hager (Stead).**

**SC 809.**

Supreme Court of Alabama.

Aug. 8, 1974.

Corretti, Newsom & Rogers, Birmingham, for petitioner.

Ernest W. Weir and Erskine R. Lindsey, Birmingham, for respondent.

BLOODWORTH, Justice.

We granted the petition of Clotyle S. Hager (Stead) for certiorari to the Court of Civil Appeals to review the judgment and decision of that court in Hager v. Hager (Stead), 53 Ala.App. 306, 299 So. 2d 740.

Petitioner (wife) and respondent (husband) were divorced April 23, 1970. They reached a property settlement agreement prior to the decree which was incorporated therein.

The final decree of divorce provides:

"1. Respondent [husband] agrees to pay to the Complainant [wife] the sum of Sixty-Nine Thousand and no/100 ($69,000.00) Dollars as *alimony in gross.* Said sum shall be payable at the rate of Two Hundred Fifty and no/100 ($250.-00) Dollars per month the first payment to commence on the first day of the month after the date of this agreement. *It is understood that in the event of the death of Complainant* [wife] *the obligation as set out herein shall no longer be binding on the Respondent* [husband] *and he shall not be liable to pay said sum or sums to any other person, including heirs and assigns of the Complainant* [wife.]

"2. Respondent [husband] further agrees to pay to the Complainant [wife] the sum of Two Hundred Fifty and no/100 ($250.00) Dollars per month as *alimony.* Alimony as set out herein in this paragraph shall terminate on the death or remarriage of the Complainant [wife] or upon Respondent's [husband] death." [Emphasis and explanation supplied.]

On August 10, 1973, respondent herein filed a petition in the Circuit Court of Jefferson County seeking to modify the terms

of the final decree of divorce. He alleged that there had been a change in circumstances in that petitioner herein had remarried and his financial condition had deteriorated.

Petitioner herein then filed a motion to dismiss the respondent's petition on the grounds that the payments provided for in Paragraph 1 of the agreement constituted "alimony in gross" and thereby created a vested right and interest in her. The Honorable William H. Cole of the Circuit Court of Jefferson County granted the petitioner's motion. No testimony was taken.

Respondent then appealed to the Court of Civil Appeals. The Court of Civil Appeals reversed, holding that "the limiting provision [of Paragraph 1], i. e., cessation upon the wife's death, to this court, prevents the award from 'vesting' as is required" in order to qualify as alimony in gross and thereby be free from modification. The court further held that, under Welch v. Welch, 49 Ala.App. 647, 275 So. 2d 162 (1973), no award of "alimony in gross" and "periodic alimony" can be made in the same decree.

We hold that the award in Paragraph 1 is "alimony in gross," is not subject to modification, and that the rule in *Welch* is not applicable to the case at bar. Accordingly, we reverse the judgment and decision of the Court of Civil Appeals, being of the opinion and judgment that the decree of the trial court which dismissed the husband's petition to modify should be affirmed.

I.

Paragraph 1 provides for a lump-sum award of $69,000.00. This award is clearly denominated "alimony in gross." However, confusion exists in our cases as to the true meaning of this term and the rights and liabilities which it connotes. Although the wording of our present alimony statute [1] is virtually the same as that which appeared in the Code of 1852 and in each succeeding code, our alimony law has undergone a substantial metamorphosis through judicial construction. Therefore, a brief history is in order.

By the law of England, before the year 1858, no divorce except from bed and board was permitted, unless the marriage was void ab initio. There was no such thing as alimony upon an absolute dissolution of marriage, but a wife was restored to possession of her property because the marriage was void. Hence, any allowance to the wife from the husband after an absolute divorce is dependent upon our statute. Smith v. Smith, 45 Ala. 264 (1871).

The forerunner [2] of our present statute was construed in Smith v. Smith, supra. The initial decree of divorce in that case provided *only* for periodic payments of $100 per annum. No total figure was decreed. Subsequently, the husband sought relief from the award on the ground of changed circumstances. The trial court granted the relief. This Court reversed. In dismissing the husband's petition, the Court held, at pages 268, 269 of 45 Ala., as follows:

"This 'allowance' to the wife is not, in fact, alimony, in the sense of the ecclesiastical law of England; but it is more strictly an arrangement in lieu of a division of the estate of the parties, so as to return to the wife her just portion of that property which mutually belonged to both during the marriage, and which the labor and care of both may have equally contributed to procure and preserve.

1. Tit. 34, § 31, Code of Alabama 1940 (Recompiled 1958):
"*Allowance to wife on decree of divorce.*—If the wife has no separate estate, or if it be insufficient for her maintenance, the judge, upon granting a divorce at his discretion may decree to the wife an allowance out of the estate of the husband, taking into consideration the value thereof and the condition of his family."

2. Ala.Code § 1971 (1852); rev. by Ala.Code § 2361 (1867).

This allowance was intended to supply the wife with the means of commencing life anew, after her expulsion from the household of the husband, and the withdrawal of his liability for her maintenance and support, and to place her above actual destitution. Such purpose could best be accomplished by making such allowance absolute and permanent. And in accordance with this purpose has been the construction of a similar statute, which has been superseded by the law above quoted. [Citations omitted.] I therefore think that the legislature intended that the 'allowance' directed to be made to the wife upon a divorce dissolving the bonds of marriage, should pass to her in absolute right as a permanent provision for her support.

"The form and manner of granting the allowance in this case cannot now be inquired into or altered. Its correctness has been affirmed on appeal to this court. [Citations omitted.] That the allowance was a sum certain, to be paid from year to year, does not change the character of the decree. This, in a decree for divorce from bed and board, is such a decree as may be subsequently modified. [Citation omitted.] But this is not such a case. Here the divorce was from the bonds of matrimony, and there can be no restoration of the conjugal relation between the parties, except by a second marriage. The reasons, then, which apply in justification of an alteration of the amount of alimony, on a divorce from bed and board, do not apply here. Most clearly the allowance in such a case as this could not be increased on the increase of the facilities of the husband; because, the first allowance is the only one authorized by the statute, and that, when once made, must necessarily be final. [Citations omitted.] Then, as the allowance cannot be increased, for the same reason it ought not to be diminished. And the ecclesiastical rule in case of a divorce from bed and board does not apply."

Thus, under the statute, it was held that all decrees for permanent "alimony" incident to an absolute divorce were not modifiable, whether the award was merely periodic or in gross, because the determination of the amount the husband should pay was based on the *present value of his estate* and not his *future earning capacity*. Furthermore, the chancery court lost jurisdiction after the adjournment of court for the term. See Gabbert v. Gabbert, 217 Ala. 599, 117 So. 214 (1928) [overruled on another issue in Epps v. Epps, 218 Ala. 667, 120 So. 150 (1929)], construing Smith v. Smith, supra.

In cases decided both before and after *Smith,* it was recognized that the statute allowed not only a periodic award but also an allowance in gross. An allowance in gross could be payable in one lump sum or in installments and could be combined with purely periodic payments. King v. King, 28 Ala. 315 (1856); Jeter v. Jeter, 36 Ala. 391 (1860); Smith v. Rogers, 215 Ala. 581, 112 So. 190 (1927).

An award in gross was held to be unmodifiable, not because it was made in lump sum, but because it was based on the value of the wife's interest in the husband's estate at the time of the divorce and because all such decrees were unmodifiable. Smith v. Rogers, supra.

However, in construing the temporary alimony statute in *Ex parte Whitehead,* 179 Ala. 652, 60 So. 924 (1913), this Court recognized the inequity of a rule that founded alimony solely on the value of the husband's estate. A deserving wife could be deprived of support if the husband had no estate even though he had a future earning capacity sufficient to provide for her. In *Whitehead,* Justice Sayre, writing for the Court, said that the husband's future earning capacity was a proper factor to be considered in making an award of temporary alimony. In so doing, he cited authority from other jurisdictions which applied this rule to an award of permanent alimony following an absolute divorce.

In Jones v. Jones, 131 Ala. 443, 31 So. 91 (1901), this Court held that a court of equity could retain jurisdiction following an absolute divorce, if the decree so provided in express terms. In subsequent cases it appears that these two rules became merged into our existing case law as to permanent alimony. See, e. g. Ortman v. Ortman, 203 Ala. 167, 82 So. 417 (1919).

Thus, on rendering a final decree for divorce, the trial court could satisfy a wife's inchoate rights in her husband's estate (dower, homestead, etc.) and provide for her future maintenance and support, considering the value of the husband's estate with regard to the former, and the husband's future earning capacity with regard to the latter. That part of the award terminating the wife's inchoate property rights could be made in gross, payable presently or in installments, as directed; that part of the award allocable to future support could be made in a lump sum or in periodic payments; the decree could use a combination of both methods. If the decree was silent as to reservation of control by the court, *any award*, regardless of the form or source of payment, was *final* and not subject to modification. If control was reserved, *either* kind of payment was *modifiable* up until the time payment was due. Smith v. Rogers, supra.

It was in this context that the term "vested" appears to have originated, as it applies to alimony. If a decree *did not* reserve control, an award was deemed "vested" because it was not subject to modification. If the husband died, the wife's right to the payments did not terminate but continued as a liability of the deceased husband's estate. Smith v. Rogers, supra; See also LeMaistre v. Baker, 268 Ala. 295, 105 So.2d 867 (1958). If a decree *did* reserve control, even an award in gross, computed on the value of the wife's inchoate rights in her husband's estate, was modifiable up until the time an installment became due. Hence, such an award was not deemed "vested" and was subject to termination on the death of the husband.

Undoubtedly, it was with this background of judicial history that Justice Somerville defined "alimony in gross" in Smith v. Rogers, supra, at page 583 of 215 Ala., at page 192 of 112 So.:

"[3] But, on principle, there is no escape from the conclusion that a decree for alimony in gross, if without reservation [of control], becomes a vested right from the date of its rendition and survives the death of the husband. Differing from a mere periodic allowance for current and continuous support, it is intended to effect a final termination of the property rights and relations of the parties, and is an approximate appraisal of the present value of the wife's future support, and, in a measure, a compensation for her loss of inchoate property rights in her husband's homestead and other estate, given to her by statute in case of her survival. [Citations omitted.] The decree therefore has the effect of a final judgment for the payment of money, * * *."

Taken in proper perspective, this definition cannot be taken as authority for the Court of Civil Appeals' conclusion that an award of periodic alimony and alimony in gross cannot be awarded in the same decree.

Following Smith v. Rogers, supra, this Court, in a series of cases considered the question as to whether or not an award of periodic payments (making no mention of a lump-sum figure or the source of payment and not clearly denominated as alimony in gross), should be modifiable if the court did not reserve control in its decree. Sullivan v. Sullivan, 215 Ala. 627, 111 So. 911 (1927); Gabbert v. Gabbert, supra; Epps v. Epps, supra.

In Epps v. Epps, supra, the Court put the question to rest, at pages 668, 669 of 218 Ala., at pages 151, 152 of 120 So.:

"[1] *Returning to the statement in Smith v. Smith, that alimony after divorce under our statute 'is more strictly*

*an arrangement in lieu of à division of the estate of the parties,' an allowance 'passing in absolute right as a permanent provision of her support,' we would say that, in so far as the allowance is from an existing estate, or charged upon an existing estate, including income from capital investment, this statement of the law cannot be questioned.*

"[2] But this court has passed far beyond *the concept of alimony* upon divorce *as solely a division of the husband's estate.*

"One manifest element entering into the allowance of alimony is the future support and maintenance of the wife after dissolution of the bonds of matrimony. Upon severance of the marital relation and consequent release of the husband from the duty of continued maintenance growing out of that relation, an allowance is decreed in lieu thereof. That such is the statutory purpose is manifest by its provisions taking into account her separate estate.

"The same thought is embodied in the statute requiring a more liberal allowance upon divorce for misconduct of the husband. Code, § 7419.

"A reading of the cases of Smith v. Smith, supra, Smith v. Rogers, supra, as well as many others, discloses the matter of continued maintenance of the wife as a basic consideration in making the allowance. Nowhere does this seem to be questioned.

"What follows? Naturally, this concept has led to basing the allowance, not merely upon the amount of the husband's estate or capital income, but also upon his future earnings and even his capacity to earn. Farrell v. Farrell, 196 Ala. 167, 71 So. 661. We have thus adopted the same source of payment in decreeing alimony after divorce, as in cases of separate maintenance (Johnson v. Johnson, 195 Ala. 641, 71 So. 415), and in cases of temporary alimony pending divorce proceedings (Ex parte Whitehead, 179 Ala. 652, 60 So. 924). See also, Ortman v. Ortman, 203 Ala. 167, 169, 82 So. 417.

"We see no reason to depart from these decisions. Take, for example, a professional man with large personal earnings, but who has spent all in high living, no one would approve a denial of alimony to his wife upon divorce because he had accumulated no estate, nor shield him in a willful abandonment of his earning capacity in order to defeat her claim.

"If, then, the allowance has regard to the duty of maintenance, and may, therefore, be properly based upon the husband's future earnings and even his capacity to earn, the duty so decreed is of necessity based upon conditions at the time. The fact of making a permanent allowance payable in future installments contemplates that the court is open to enforce the performance of such duty by contempt proceedings, if necessary."

\* \* \* \* \* \*

*"A decree providing for monthly payments* of $100 per month, to run indefinitely, *implies an allowance for support and maintenance to be met by the husband from his income or earnings,* if need be. Such a decree *is subject to modification on proper application and showing that performance is no longer possible or highly inequitable.*

"In this case the trial court found that the husband had, at the time divorce proceedings were pending, turned over to the wife property of about the value of $10,000, which she now has, and which is yielding a substantial income; that the decreed allowance of $100 per month was paid for several months; that the husband became unable to pay; that the recorded decree operates to cripple or destroy his earning power, etc.

"An allowance of $100 per month, an annuity of $1,200 to run during the life expectancy of a young and healthy woman, is equivalent to her share in quite a

**54**

considerable estate. The husband had no such estate. Such as he had, he gave in large part at the time.

"*These facts merely confirm the purpose of the decree as implied from its form, one based on future earnings for the continued maintenance of the wife, and hence dependent upon such earnings for payment. There was no error in holding it subject to modification for good cause.*" (Emphasis supplied.)

 As a result of *Epps,* supra, it is now well settled that *an award of periodic alimony* based on the husband's future earning capacity *is modifiable* whether or not the court reserves control in its decree. However, the decision in *Epps* did not change the rule that an award may be made in gross, payable presently or as directed (in installments), based on the value of the wife's inchoate rights in her husband's estate, and that absent an express reservation of control such an award is not modifiable. Neither did *Epps* change the rule that a decree might combine an award in gross with an award of periodic alimony. In addition to compensation for the wife's inchoate marital rights, an award in gross may also represent a division of the fruits of the marriage where liquidation of a couple's jointly owned assets is not practicable. For this very reason "alimony in gross," which has come to represent a settlement of property rights, is often coupled with an award of periodic alimony. In Welch v. Welch, 49 Ala.App. 647, 275 So. 2d 162 (1973), cited by the Court of Civil Appeals as authority for the proposition that alimony in gross cannot be coupled with periodic alimony, that court held, viz.:

"Although never considered by our Supreme Court, this question has been alluded to in several opinions in which the court has either stated that alimony in gross and periodic alimony may be awarded at the same time, Smith v. Ro-

gers, 215 Ala. 581, 112 So. 190; Thompson v. Thompson, 282 Ala. 248, 210 So. 2d 808; or considered such an award without considering the specific correctness of awarding both types of alimony at·the same time. Leo v. Leo, 280 Ala. 9, 189 So.2d 558. We reiterate, the specific question with which we are concerned is not considered in the three above cited cases, nor do the authorities cited in those cases support an award of alimony in gross along with periodic alimony."

We believe that this Court has never directly passed on this question because it has considered, without directly deciding, that the two types of awards could be joined in the same decree. Therefore, to the extent that Welch v. Welch, supra, is inconsistent with this opinion, it is overruled.

II.

 As we thus perceive from the foregoing analysis of our case law, the term "vested" simply signifies that an award of "alimony in gross" is not subject to modification. We have found no case which holds that the unmodifiable character of "alimony in gross" is changed by a clause that terminates the installments in case of the wife's death. Indeed, the courts of Illinois, when faced with this very question, have held that the unmodifiable character of alimony in gross is *not affected* by a *termination clause.* In at least two cases, the Illinois courts reasoned that because of their very purpose (compensation for noninheritable marital rights) payments of alimony in gross terminated as a matter of law upon the wife's death or remarriage. Banck v. Banck, 322 Ill.App. 369, 54 N.E. 2d 577 (1944); Hotzfield v. Hotzfield, 336 Ill.App. 238, 83 N.E.2d 605 (1948).[3]

After these decisions were rendered, the Illinois legislature amended its alimony

3. We express no opinion on this particular aspect of alimony in gross and reserve our decision until such time as the question is properly before us.

statute[4] by expressly making the right to installments of alimony in gross survive the death of the wife. Subsequent to the enactment of the amendment, it was contended that a clause terminating an award of alimony in gross (payable in installments) on the death of the wife was void as against public policy. The Illinois appellate court held that the clause was not void and that it did not change the unmodifiable character of alimony in gross. Roberts v. Roberts, 90 Ill.App.2d 194, 234 N.E.2d 372 (1967).

We agree with the Illinois court's decision[5] and must reject the Court of Civil Appeals' reasoning that because an award of alimony in gross survives against the husband it must also survive in favor of the wife if it is to be unmodifiable.

Thus, we hold that neither a clause providing for termination of the death of the wife nor the inclusion in the decree of a separate award of periodic alimony prevent a lump-sum award from being unmodifiable if that award was intended as "alimony in gross."

### III.

When the type of award or awards intended is not particularly specified, the source of payment and the purpose are of prime importance. Borton v. Borton, 230 Ala. 630, 162 So. 529 (1935). "Alimony in gross" is the present value of the wife's inchoate marital rights—dower, homestead, quarantine, and distributive share. It is payable out of the husband's present estate as it exists at the time of divorce. Borton v. Borton, supra. On the other hand, "periodic alimony" is an allowance for the future support of the wife payable from the current earnings of the hus-

band. Thompson v. Thompson, 282 Ala. 248, 210 So.2d 808 (1968).

In the instant case, the award in paragraph one is clearly denominated "alimony in gross." The amount is fixed ($69,000) and the time of payment is certain (monthly until satisfied). Nothing in Paragraph 1 reserves the right in the court or in one of the parties to unilaterally terminate these payments.

Conversely, the award in Paragraph 2 is designated as "alimony" and was obviously intended to provide for the current and continuous support of the wife out of the husband's future earnings, being subject to modification as circumstances change and ceasing upon the death or remarriage of the wife when the marital duty to support naturally terminates.

When the two paragraphs are construed *in pari materia,* Paragraph 1 seems clearly to have been intended to compensate the wife for something other than loss of support. It appears to us that the most reasonable construction is that it was intended to be, as denominated, "alimony in gross," a property settlement award, compensating the wife only for the loss of her rights in her husband's estate. Therefore, we hold the award in Paragraph 1 is "alimony in gross." There being no express reservation of control in the decree, Paragraph 1 is not modifiable.

Accordingly, the judgment and decision of the Court of Civil Appeals is reversed and remanded for entry of a judgment and decision in accordance herewith.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, HARWOOD, MADDOX, McCALL, FAULKNER and JONES, JJ., concur.

---

4. Ill.Rev.Stat.1965, c. 40 § 19.

5. The Illinois alimony statute, Ill.Rev.Stat. 1969, C. 40 § 19, provides as follows: " * * * The court may order the husband or wife, as the case may be, to pay to the other party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement *in lieu of alimony,* as the court deems equitable." Because of the wording of this statute, an award of alimony in gross in Illinois cannot be coupled with periodic alimony. No such statutory provision exists in this state. Overton v. Overton, 6 Ill.App.3d 1086, 287 N.E.2d 47 (1972).