331 So.2d 730

James F. PAULK

v.

Kathryn U. PAULK.

Civ. 667.

Court of Civil Appeals of Alabama.

May 5, 1976.

Cassady & Fuller, Enterprise, for appellant.

Pittman & Whittaker, Enterprise, for appellee.

WRIGHT, Presiding Judge.

This is an appeal from a decree of modification of alimony after remarriage of wife.

This case has traversed a long and complicated course. There have been several exhaustive hearings resulting in comprehensive and erudite decrees beginning with the original divorce decree and culminating in that from which this appeal was taken. We are impressed with the patience of the trial judge and with his effort to render equity between the parties.

This matter began with suit for divorce with cross-complaint. Divorce was granted on the ground of incompatibility, with custody of four children given to the mother. Child support of $1,000.00 per month and periodic alimony of $500.00 per month was granted the wife. Determination of property division and other alimony provisions was specifically reserved for future consideration.

The testimony disclosed that the parties had married while they were students in college. After the marriage the wife dropped out of college and began work while the husband continued his medical course. After completing undergraduate school the husband entered medical school at the University of Alabama in Birmingham. The wife bore two children while the husband completed his medical studies. The husband worked at various jobs after school hours to support his family and finance his education. He received financial assistance from his family and from scholarship and loan funds. The wife worked between babies and made a contribution to the family's support.

After receiving his medical degree, husband spent two years in the army. One of the years was spent in Viet Nam. Upon release from the army, the husband set up practice in Enterprise, Alabama. At the time of the divorce, he was practicing medicine with two other doctors in a professional association. His gross income approached $48,000.00 annually.

After the birth of her fourth child, the wife again began to pursue her own education. She ultimately received a baccalaureate degree. A few months before their separation, parties had purchased 85 acres of land and constructed a large home thereon. Because of overruns in construction, the cash assets of the parties had been dissipated and two mortgages were placed on the property. It was because of the anticipated difficulty of disposing of such an expensive property that the court reserved consideration of property division and alimony in gross in the original decree.

Shortly after the divorce, the wife moved from the home to Mobile where she intended to study for an advanced degree. The oldest child, by agreement, returned to live with the father. When a sale for the home had not been found after several months, the parties entered into an agreement on January 31, 1975, whereby the husband purchased the interest of the wife. As a full and final property settlement the husband paid to the wife, $12,860.00—$7,500.00 in cash and $5,360.00 payable monthly at the rate of $100.00 or $250.00 if husband's annual net income increased 10% over that of 1974. Other provisions, including attorney fees and maintenance of $50,000.00 in life insurance for benefit of the children, were included. It was also agreed that child support would be reduced $225.00 per month as long as the oldest child remained with his father. The agreement was incorporated in a decree of the court on February 18, 1975.

February 12, 1975, the wife remarried. On March 4, 1975, husband petitioned for modification of alimony because of the re-marriage. Wife answered averring that she had not adequately been compensated for her contribution to the marriage and in particular for foregoing her education and aiding the husband in securing his. She further stated that her new husband was unable to support her in the style to which she was accustomed as the wife of Dr. Paulk. She requested continuation of alimony for at least ten years.

Upon the petition and answer another hearing was held.

The evidence disclosed that the wife, Mrs. Paulk, hereafter called Mrs. Williams, remarried on February 12, 1975; that she now resided with her new husband and children in his home on Dauphin Island; that Williams owned and operated a service station, netting income therefrom of $8,000.-00 to $10,000.00 annually; that she was employed, netting $425.00 per month; that Dr. Paulk had also remarried and his wife earned a substantial income as a nurse; that the income of Dr. Paulk remained approximately what it was as of the date of the divorce; that his obligations remained substantially the same except he was now paying the monthly sum of $250.00 on the $5,360.00 involved in the property settlement, and that Dr. Paulk had ceased paying the $400.00 alimony to Mrs. Williams as of March 1, 1975.

There was a rehash of the previous testimony concerning the contribution of the wife to the marriage and the education and career of Dr. Paulk.

The court proceeded to enter a six-page decree recounting the prior decrees, their purpose and intent. It was recalled that the determination of property settlements and alimony in gross was reserved in the original decree. The court considered what power it now possessed to grant either alimony in gross or a continuation of periodic alimony, even though the wife had remarried.

The result was that the court ordered the additional payment to Mrs. Williams of

$7,200.00 payable $200 per month for three years. It further ordered a payment of $1,600.00 to Mrs. Williams representing full alimony for the months of March, April, May and June, 1975.

Motion for new trial was filed and additional testimony was taken thereon. A decree was entered denying a new trial, but setting specific dates and times for custody of and visitation of Dr. Paulk with his children.

The appeal of Dr. Paulk presents only one issue. That is: did the court err in requiring payment of alimony after the remarriage of his former wife?

We approach the issue by first stating that the trial court in its decree found that it had the authority to grant Mrs. Williams the additional sum of alimony upon either of two theories. It first said that it had reserved the determination of alimony in gross in the original decree and that the additional sum of $7,200.00 could be granted as alimony in gross. It next said that if it were determined that authority was lacking to grant alimony in gross, there was authority in the court to continue the periodic alimony even though the wife had remarried.

We shall consider the theories of the trial court in the order presented. In reality each theory presents two questions. (1) Did the court possess authority? (2) Is the award supported by the evidence?

What is alimony in gross and how may it be identified has been in considerable confusion in the trial and appellate courts of this state until the decision of the Supreme Court in the case of *Hager v. Hager,* 293 Ala. 47, 299 So.2d 743 (1974). Accepting certiorari of a decision of this court, the Supreme Court, speaking through an erudite opinion written by Mr. Justice Bloodworth, clarified the meaning of many prior decisions concerning alimony in gross.

We set out from *Hager v. Hager, supra,* several pertinent statements concerning alimony in gross as follows:

" 'Alimony in gross' is the present value of the wife's inchoate marital rights—dower, homestead, quarantine and distributive share. It is payable out of the husband's present estate as it exists at the time of divorce. . . ."

"In addition to compensation for the wife's inchoate marital rights, an award in gross may also represent a division of the fruits of the marriage where liquidation of a couple's jointly-owned assets is not practicable. For this very reason, 'alimony in gross,' which has come to represent a settlement of property rights is often coupled with an award of periodic alimony."

The court further said in *Hager* that

"(A)n award may be made in gross, payable presently or as directed (in installments) based on the value of the wife's inchoate rights in her husband's estate, and that absent an express reservation of control such an award is not modifiable."

*Hager* further said:

"When the type of award or awards intended is not particularly specified, the source of payment and the purpose are of prime importance. *Borton v. Borton,* 230 Ala. 630, 162 So. 529."

Considering the above principles from *Hager v. Hager, supra,* and applying them to the testimony and the statements of the trial court in its decree, we arrive at the following conclusions. First, the court in the original decree did reserve determination of settlement of property rights until a future time relative to a sale or disposition of the home. Thus the authority of the court to modify the original decree as to property rights and disposition is not in question. Such right was specifically reserved.

Second, the agreement of the parties entered into January 31, 1975, and incorporated in the judgment of the court

on February 18, 1975, contained the following:

"The parties hereto enter into this agreement for the purpose of resolving and accomplishing a full and final settlement between them with respect to property settlement arising out of their former status as husband and wife."

The judgment incorporating this agreement containing the above-stated purpose contained no further reservation of control of the property or marital rights of the parties. The agreement contained remuneration of $12,860.00 to the wife and $250.00 fee to her attorney. Such remuneration was paid to the wife even though the home was admittedly subject to debt in amounts probably greater than its market value. We believe the intent of the agreement, entered into by the wife just 12 days before her remarriage, is clear. It was intended to terminate all of her rights and interest in the estate of the husband as it existed at the time of the divorce. We conclude that such intent was completed by the incorporating judgment of the court. Having reserved no further control in its judgment of February 18, 1975, the matter of property settlement and/or alimony in gross was not thereafter modifiable. *Hager v. Hager, supra.*

■ We would further speak to the question of support in the evidence for such an award from the estate of the husband. We have already said, as did the trial court in its decree, that the property was heavily indebted. It had been on the market for sale for some eight months subsequent to the divorce. The evidence was that no offer had been made in a sufficient amount to pay the indebtedness. The only other estate possessed by Dr. Paulk was a half-interest in office property of undetermined value and equity. It is the opinion of the court that the evidence does not support an award of $7,200.00, in addition to the $12,860.00 paid, to be paid from the estate of Dr. Paulk as it existed at the time of the divorce. The indebtedness of such estate exceeded its market value.

We come now to the second theory upon which the court based its award: that of continuation of periodic alimony after remarriage of the wife.

■ The trial court has correctly stated the law of Alabama that the remarriage of the wife does not ipso facto annul alimony, but only affords a ground for doing so upon petition for modification. But as our esteemed brother Thagard said in *Hora v. Hora,* 46 Ala.App. 513, 244 So.2d 601.

"(A) subsequent marriage . . . ., affords a cogent and convincing reason for the court to modify or cut off the allowance altogether. *Morgan v. Morgan,* 211 Ala. 7, 99 So. 185."

■ At the time of her remarriage, Mrs. Paulk-Williams was receiving $400.00 per month in periodic alimony from Dr. Paulk. Periodic alimony is an allowance for the future support of the wife, payable from the current earnings of the husband. *Thompson v. Thompson,* 282 Ala. 248, 210 So.2d 808. In *Hager v. Hager, supra,* the court said of periodic alimony that it was

"(S)ubject to modification as circumstances change and ceasing upon the death or remarriage of the wife when the marital duty to support naturally terminates."

We concede that the last phrase of this statement is mere dicta and does not overrule the rule of *Morgan v. Morgan, supra,* but it does represent this court's belief of what the law of alimony should be.

■ The evidence in this case is that Mrs. Williams while receiving $400.00 per month in alimony chose to remarry. She had a perfect right to do so. However, having taken such a course, the legal responsibility for her support was placed upon her new husband. How many husbands, present and past should a woman be able

to secure support from? If a prior husband's obligation to pay alimony is not terminated by the remarriage, the result might well be that he is furnishing financial support not only to his former wife but to her husband as well.

The evidence in this case from the wife is that her new husband supports her "in every way." Though the present husband does not have the income of Dr. Paulk, he does earn enough to replace the alimony being paid by Dr. Paulk. In addition, the wife is working and earning over $6,000.00 per year. It is clear that the wife does not require further payments from Dr. Paulk for her support. In fact, the respected and learned trial judge stated at length that the primary consideration for granting the additional sum of $8,800.00 in alimony after remarriage was not for support but to aid the further education of the wife. Emphasis was placed upon the fact that Mrs. Williams withdrew from college after her marriage to Dr. Paulk and assisted in his education. Though Dr. Paulk financed her pursuit of a college degree after he began his practice, Mrs. Williams wishes to now obtain a master's or a doctorate degree so that her ability to earn will be increased. The trial judge states that the additional payment is primarily for this purpose and as compensation for the prior sacrifice of Mrs. Williams during her marriage to Dr. Paulk, rather than a need for present support. This court considers that continuation of periodic alimony after remarriage, as compensation for services freely given during the prior marriage rather than need for present support, is an abuse of discretion. Such basis for an award of periodic alimony is new to the law and if implemented on appeal will have serious precedential consequences. We therefore must respectfully reverse the judgment insofar as it awards the sum of $7,200.00, payable $200.00 per month for three years.

There is no contention of error by appellant in the order of payment of the $1,600.00 which accrued prior to the decree of modification. Therefore, we do not disturb the judgment for that amount.

We affirm the judgment in part. We reverse the judgment for the payment of $7,200.00, and render a judgment granting modification which terminates payment of further alimony as of June 1, 1975, whether denoted alimony in gross or periodic alimony.

AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

BRADLEY and HOLMES, JJ., concur.