PITTMAN, Judge.
 

 Jesse Hatley, Jr. (“the husband”), appeals from a judgment divorcing him from Cathy Wyatt Hatley (“the wife”) that, among other things, awarded her a portion of the funds in the husband’s retirement account, awarded her periodic alimony, and divided the marital property between the parties. We reverse and remand.
 

 The parties were married in 2000; however, the evidence was undisputed that the parties had lived together for at least 10 years before holding a ceremony. The parties had no children together. On March 22, 2007, the husband filed a complaint in the St. Clair Circuit Court seeking, among other things, a divorce, an equitable division of the parties’ real and personal property, and an equitable allocation of the parties’ marital debts. Subsequently, the wife filed an answer, a counterclaim seeking a divorce, and a request for pendente lite alimony. During the pendency of the divorce proceedings, the trial court entered several orders that allowed the parties to live in the marital residence and to share the common areas, that instructed the husband to pay $75 in weekly temporary alimony to the wife, that enjoined the parties from disposing of any marital property or assets before trial, and that instructed the husband to pay all debts and expenses associated with the marital residence until trial.
 

 On February 2, 2009, the trial court conducted an ore tenus proceeding; only the husband and the wife testified. The testimony was sparse and fairly acrimonious; the wife was called first as an adverse witness by the husband. The husband tried to establish that the wife had been secretly seeing another man and that she had previously admitted to having used “crack” cocaine on two or three occasions. On the other hand, the wife established that the husband had submitted to inpatient treatment at Bradford to address a cocaine habit; she also alleged that the husband had committed adultery with the divorced mother of one of his son’s friends.
 

 By calling the wife as an adverse witness, the husband attempted to establish that the wife had been employed throughout most of the parties’ relationship; however, the husband himself testified that the precipitating event inducing the parties to have a wedding ceremony was when the wife had suffered a seizure that resulted in the loss of her employment and her medical insurance. The husband stated that the only reason he had married the wife was to allow her to obtain medical-insurance coverage through his employer’s plan. The wife testified that she was taking nu
 
 *1033
 
 merous medications to control the seizures, including levetiracetam (Keppra), pheny-toin (Dilantin), quetiapine (Seroquel), and clonazepam (Klonopin). In addition, the wife stated that she had been involved in a motor-vehicle accident in July 2007 that had totaled her automobile and that she had not been able to drive since that time.
 

 The wife testified, and the husband agreed, that the husband’s mother, who suffered from polio, had lived with the parties; until the husband’s mother had died in 2006, the wife had been her mother-in-law’s primary caregiver. The wife also stated that, by the time of trial, she had become unable to work and that either a friend or her mother had been driving the wife to the pharmacy, to medical appointments, and to other appointments. The wife testified that, because she had been unable to work for some time, she had applied for federal disability benefits; however, she requested that, until such time as she succeeded in obtaining such benefits, the husband be ordered to pay monthly monetary support to her and to help her keep some medical-insurance coverage. She also asked the trial court to order the sale of the marital residence and to divide the proceeds of the sale; additionally, she requested that the trial court divide the marital personalty between the parties and to award her a working motor vehicle.
 

 The testimony established that the husband had owned a house on Grove Street in Springville that he had sold shortly after the parties had purchased the marital residence on Pearl Lake Road; the husband testified that the $50,000 he had received for selling the Grove Street property had been deposited into an investment account at Compass Bank. The husband testified that he had worked for Motion Industries as a hydraulic service technician for 30 years. He stated that, until the end of 2008, he had made “a very good living” earning $29 per hour and that, until the beginning of 2009, he had worked at least 1000 hours of overtime every year. The husband testified that the company had seriously reduced his work hours so that he was working only 32 hours per week at the time of trial. Additionally, the husband stated that, because of a stock-market decline, the balance in his 401(k) retirement account, to which the husband had contributed for 30 years, was only $139,000.
 

 The husband also testified that although the parties had paid $350,000 for the marital residence, that property was encumbered by two mortgage loans totaling nearly $300,000; in addition, he opined that he could not sell the house in the current market for more than the outstanding loan balances. In addition, the husband stated that he had taken a $42,000 loan against his 401(k) retirement account to make the down payment on the marital residence in 2003 and that he was still repaying that amount in $250 monthly installments. The husband stated that he had improved the marital property by building a large “Quonset-type” building (a 30-foot by 50-foot garage) in which his son performed car repairs; he stated that he and his son had stored tools there that he would like to keep. The husband also testified that he would like to keep the marital residence; he opined that the majority of the furniture in the home consisted of antiques bequeathed to him by his mother and that he wanted those items. The husband concluded that he had earned everything he owned by himself, and he opined that the wife had not contributed anything to those acquisitions.
 

 Nine days after the ore tenus proceeding, the trial court entered a judgment divorcing the parties. In that judgment, the husband was ordered to pay $750 in monthly periodic alimony to the wife, to
 
 *1034
 
 pay one-half of the costs of providing medical coverage for the wife for 18 months following the divorce, and to pay $2,500 toward the wife’s attorney fees. In addition, the judgment ordered that the marital residence be appraised and that either party would have 90 days to offer to pay one-half of the fair-market value of the marital residence, less any indebtedness owed on that property, to the other; barring such an offer, after 90 days had elapsed, the property was to be sold at public or private sale and the proceeds divided equally, or, if the parties could not agree on a sale price, the property would be auctioned to the highest bidder 180 days following the judgment. The judgment also awarded each party his or her personal property and divided the household belongings and motor vehicles between the parties. The wife was awarded one-quarter of the funds in the husband’s 401 (k) retirement account at Motion Industries; the husband was awarded sole possession of an inheritance from his mother totaling approximately $40,000. Additionally, specified accounts on a list of checking, savings, and brokerage accounts were divided equally so that each party was awarded one-half of the amount in each account. The husband was ordered to pay all the marital debts.
 

 The husband filed a postjudgment motion in which he essentially challenged all the awards of money and property to the wife, citing the relatively short duration of the marriage, his allegations that the wife was at fault for the breakdown of the marriage, and his contention that the parties had kept separate finances throughout the marriage. That motion was denied, and the husband timely appealed.
 

 The husband contends that the trial court erred in dividing the marital property in a manner that, he says, was inequitable. Specifically, he asserts that the wife was not entitled to an award of periodic alimony and that she was not entitled to a portion of the funds in his retirement-account.
 

 Our standard of review is well settled.
 

 “The trial court is afforded a wide degree of discretion in dividing the marital assets of the parties upon divorce.
 
 Moody v. Moody,
 
 641 So.2d 818 (Ala.Civ.App.1994). The only limitation on that discretion is that the division of property be equitable under the circumstances of the particular case, and the task of determining what is equitable falls to the trial court.
 
 Ross v. Ross,
 
 447 So.2d 812 (Ala.Civ.App.1984). This court must consider the issues of property division and alimony together when reviewing the decision of the trial court,
 
 Albertson v. Albertson,
 
 678 So.2d 118, 120 (Ala.Civ.App.1995), and, because the facts and circumstances of each divorce case are different, this court must also consider the particular facts and circumstances of the case being reviewed.
 
 Murphy v. Murphy,
 
 624 So.2d 620, 623 (Ala.Civ.App.1993). In making the division, the trial court may consider several factors, including the parties’ respective present and future earning capacities, their age and health, their conduct, the duration of the marriage, and the value and type of marital property.
 
 Lutz v. Lutz,
 
 485 So.2d 1174 (Ala.Civ.App.1986). The property division made by the trial court will not be set aside on appeal absent a palpable abuse of that discretion.
 
 Id.”
 

 Cantrell v. Cantrell,
 
 773 So.2d 487, 489-90 (Ala.Civ.App.2000);
 
 see also Rhodes v. Rhodes,
 
 38 So.3d 54 (Ala.Civ.App.2009). Moreover, the determination whether certain assets are part of a party’s separate estate or are divisible marital property is a determination that must be based upon the facts in each case; such a determination is
 
 *1035
 
 largely in the trial court’s discretion.
 
 See Ex parte Drummond,
 
 785 So.2d 358, 361 (Ala.2000);
 
 see also Kaufman v. Kaufman,
 
 934 So.2d 1073, 1080 (Ala.Civ.App.2005). Additionally, in examining whether the trial court’s property division amounts to an abuse of its discretion, the proper question to be resolved is whether the property division was equitable under the facts of the case.
 

 In reference to the husband’s contention that the wife was not entitled to an award of periodic alimony at the conclusion of their seven-year marriage, we note that the husband testified that the parties had lived together unmarried for at least 10 years when the wife had suffered a seizure and learned she was going to lose her medical-insurance coverage. The husband stated that he had agreed to marry the wife primarily so that she could maintain medical-insurance coverage as his dependent; he insisted that they had continued to maintain separate and independent finances. In contrast, the wife testified that, before they were ceremonially married in 2000, the parties had conducted themselves more like a “common-law” marriage.
 
 [1]
 
 Documents admitted into evidence reflect that, although the husband insisted that he alone had purchased the Grove Park property that had served as the marital residence for three years after the parties had married, both the husband and the wife had signed the first and second mortgages secured by the marital residence purchased in 2003. In addition, both parties acknowledged that the wife had been the husband’s mother’s primary caregiver for the five years immediately preceding her death in 2006.
 

 Although the husband contends that the trial court’s division of property and award of alimony were in error, we note that the trial court must apply certain factors when dividing marital property and determining the need for alimony. Those factors include considering the length of the marriage; the age and health of the parties; the future prospects of the parties; the standard of living to which the parties have become accustomed during the marriage; and the fault of the parties contributing to the breakup of the marriage.
 
 Golden v. Golden,
 
 681 So.2d 605, 608 (Ala.Civ.App.1996);
 
 see also Ex parte Foley,
 
 864 So.2d 1094, 1097 (Ala.2003). Although the husband asserts that the brevity of the marriage militates against an award of alimony, our caselaw establishes “ ‘that the primary purposes of periodic alimony are: (1) to preserve the economic status of the parties that existed during the marriage; and (2) to provide support to the dependent former spouse.’ ”
 
 Ex parte Elliott,
 
 782 So.2d 308, 312 (Ala.2000) (quoting
 
 Kahn v. Kahn,
 
 682 So.2d 1377, 1380 (Aa.Civ.App.1996) (emphasis omitted)). Even in marriages of short duration, this court has upheld periodic-alimony awards to enable the recipient spouse to pay for living expenses even if the recipient spouse is not able to maintain the same economic level as before the parties were divorced.
 

 In
 
 Capps v. Capps,
 
 699 So.2d 183 (Ala.Civ.App.1997), this court affirmed the trial court’s judgment ordering the husband in that case to pay $500 in monthly periodic alimony and to provide medical insurance for the wife in that case, even though the husband asserted that the wife had caused the breakup of the marriage and even though the parties had only been married and cohabiting for about 7 years.
 
 Capps,
 
 699 So.2d at 185-86. In
 
 Jernigan v. Jernigan,
 
 344 So.2d 778 (Aa.Civ.App.1977),
 
 *1036
 
 the wife in that case sought a divorce after only three and one-half years of marriage. In that case, this court noted that the wife had been in ill health throughout the marriage and had been unable to work at the time of trial. This court affirmed the trial court’s judgment awarding the wife $200 in monthly alimony and the marital residence. Jer
 
 nigan,
 
 344 So.2d at 780.
 

 Just as in
 
 Jernigan,
 
 the wife in the instant case had been ill throughout the parties’ brief marriage, and she testified that she was unable to work and had no assets to pay her medical bills and living expenses. Given the seriously impaired health of the wife and the wife’s lack of disposable assets or income, the relative brevity of the parties’ marriage does not “trump” the other
 
 Golden
 
 factors.
 

 The statutory authority of a trial court to award periodic alimony is codified at § 30-2-51, Ala.Code 1975. That statute provides, in pertinent part, “the [trial court] may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the [trial court] finds from the evidence that the property, or income produced by the property has been used regularly for the common benefit of the parties during their marriage.” Ala.Code 1975, § 30-2-51(a). Although the husband established that the wife never deposited any moneys into his “separate” accounts, the wife did establish that, regardless of who paid for the properties, both the marital residence and the Grove Street property were used “regularly for the common benefit” of the parties during the marriage; the husband himself testified that the proceeds of the sale of the Grove Street property had been the bulk of the money in one of his “separate” bank accounts. In addition, both parties acknowledged the long period of uncompensated time that the wife had spent taking care of the husband’s mother.
 

 This court has previously noted that alimony in gross is the present value of the recipient spouse’s inchoate marital rights, such as “ ‘dower, homestead, quarantine, and distributive share,’ ” and that “ ‘[i]t is payable out of the husband’s present estate as it exists at the time of divorce.’ ”
 
 Murphy v. Murphy,
 
 624 So.2d 620, 622 (Ala.Civ.App.1993) (quoting
 
 Hager v. Hager,
 
 293 Ala. 47, 54, 299 So.2d 743, 749 (1974)). Although neither the trial court in its judgment nor the parties in their briefs mention the term, alimony in gross, the financial awards made to the wife from the various bank accounts may be viewed as compensation for the wife’s inchoate marital rights.
 
 See Hager,
 
 293 Ala. at 54, 299 So.2d at 749;
 
 see also Zinnemian v. Zinnerman,
 
 803 So.2d 569, 574 (Ala.Civ.App.2001).
 

 Although the husband now disputes the wife’s contention that she is unable to work, the wife testified regarding the large quantities of medications she takes to control her seizures. She also stated thht she had “lots” of unpaid medical bills that had accrued during the pendency of the divorce action. The husband did not rebut the wife’s assertions regarding her physical abilities at trial; he merely testified that, after losing her job with Motion Industries, she had worked in a florist business in which he had previously held an ownership interest. Based upon the evidence indicating that, throughout the marriage, the husband had earned “a very good living” while the wife had lost her job and medical-insurance coverage because she suffers from seizures and cannot earn a sufficient income to support herself in the future, we cannot conclude that the trial court exceeded its discretion in dividing the parties’ assets and awarding periodic alimony to the wife.
 

 That being said, however, the husband’s contention that the trial court erred
 
 *1037
 
 in awarding the wife a portion of the funds in the husband’s 401 (k) retirement account is well taken. The wife concedes in her appellate brief that the parties were not married for the statutorily required 10 years in order for her to be awarded a portion of the husband’s retirement funds,
 
 see
 
 § 30 — 2—51(b)(1), Ala.Code 1975, and the trial court made no determination that the parties had been married before 2000 at common law. Because, as noted previously, we review the award of alimony and the division of marital property together to determine whether the trial court exceeded its discretion, and because we have determined that the trial court erred insofar as it awarded the wife a portion of the funds in the husband’s retirement account, we must reverse the trial court’s judgment as to the property division and alimony award in its entirety. Upon remand, the trial court may adjust those awards so as to institute an equitable property division between the parties.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . We note that the trial court did not determine in its judgment that a common-law marriage had existed.