MOORE, Judge.
Kenneth J. McGowin (“the husband”) appeals from a judgment of the Covington Circuit Court (“the trial court”) divorcing him from Pamela D. McGowin (“the wife”). We affirm the trial court’s judgment in part, reverse the judgment in part, and remand the cause to the trial court.

Procedural History

On June 26, 2014, the wife filed a complaint seeking a divorce from, the husband. The husband filed an answer to the complaint and a counterclaim for a divorce, asserting, among other things, that the parties had entered into an antenuptial agreement before their marriage and requesting that the trial court enforce the agreement. The wife filed a reply to the husband’s counterclaim. A trial was held on November 3, 2014;' at the outset of the trial, the parties stipulated to the validity of the antenuptial agreement. The trial court entered a final judgment of divorce on March 20, 2015, that, among other things, divorced the parties and noted that the antenuptial agreement was valid and controlled the distribution of property between the parties. Among other things, the trial court ordered the husband to pay $2,500 per month to the wife as periodic alimony and awarded the husband the marital home on Easley Drive in Andalusia, noting that the husband had paid to the wife “a sum sufficient enough to more than recompense the wife for her share of the equity in the marital home.” The husband filed his notice of appeal to this court on April 17, 2015.

Analysis

The husband first argues that the trial court erred in awarding alimony to the wife in contravention of the parties’ antenuptial agreement. The antenuptial agreement states, in pertinent part:
“Both [the wife] and [the husband] own an interest in property. Each party intends that each shall retain all right to manage, dispose of, own and acquire property to the same extent as if he or she remained unmarried. Both [the wife] and [the husband] freely and voluntarily enter into this Agreement with full knowledge of the other’s interest in real, and personal property and its approximate value and with full knowledge of the interest and approximate value of the Estate to which he or she is relinquishing a right.' Each party has made a full disclosure to the other of his or her income, asset’s and liabilities. Both parties admit and acknowledge that this Agreement is executed with full knowledge and understanding of all rights conferred by law in the Estate of the other by reason of the marriage relationship.
“Although not limited to the following, [the wife] has at the present time an interest in the following described real property and will maintain same as her separate property during the marriage relationship:
“The N ⅛ of lots 3 & 4, Block 4, Green Acres Subdivision, as addition to the *864 City of Andalusia, Alabama, according to the map and plat of said Addition as recorded in the Office of the Judge of Probate of Covington County, Alabama, in Plat Book 2, Page 57.
“Each party acknowledges that she or he has had ample opportunity to make an independent examination and valuation of the Estate of the other. Each party acknowledges that the party has disclosed as much information respecting her or his Estate as is available, including access to accounting and tax records. Each party acknowledges that the other has made a full and fair disclosure of her or his income, assets and liabilities. Each party acknowledges that she or he has made a full and fair disclosure of her or his own income, assets and liabilities to the other.
[[Image here]]
“NOW THEREFORE, the parties intending to be legally bound hereby and intending to bind themselves, them heirs and their personal representatives, in consideration of them mutual promises, mutually agree and covenant as follows:
“1. [The husband] shall hold all property, real, personal and mixed, which he owned prior to the marriage with [the wife], as his separate property, free of all rights and claims of [the wife] arising out of the marriage, whether by way of homestead, inheritance or otherwise.
“2. [The wife] does hereby waive and relinquish any and all rights and/or claims in and to the property, real, personal and mixed which [the husband] owned prior to the marriage, including the income from his separate property, the increase in value of his separate property, any property acquired with his separate property, the proceeds of any sale of his separate property or the investment of same, all of which shall be deemed [the husband’s] separate property.
[[Image here]]
“10. By this Agreement, the parties are not limited from jointly holding property with the other, should they elect to establish such joint ownership. In the event that the parties do elect to establish joint ownership in specific property, said joint property will be divided equally between them if they divorce.
“11. In the event that the marriage of the parties ends in annulment or divorce, [the wife] will make no claim of any right, title or interest in or to the separate property of [the husband].
[[Image here]]
“13. [The wife] will, claim no right, title or interest to any retirement benefits of [the husband] unless he expressly designates some right, title or interest to be hers.”
The husband contends that the antenuptial agreement unambiguously prohibits the wife from making a claim against his separate property and thereby prevents her from obtaining periodic alimony.
The interpretation of a provision in an antenuptial agreement involves a question of law, which this court reviews de novo. Laney v. Laney, 833 So.2d 644, 646 (Ala.Civ.App.2002). The antenuptial agreement at issue in this case does not specifically preclude the wife from seeking an award of periodic alimony from the husband. The husband maintains, however, that the wife waived any claim to periodic alimony in paragraph 11 of the ante-nuptial agreement by agreeing that she would not claim “any right, title or interest in or to the separate property of [the husband].”
In its judgment, the trial court awarded the wife periodic alimony, but it *865 did not specify the source of that award. In Alabama, periodic alimony is solely the creature of statute. Ivey v. Ivey, 378 So.2d 1151, 1152 (Ala.Civ.App.1979). The power to award alimony arises from Ala. Code 1975, § 30-2-51(a), which provides, in pertinent part:
“If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse’s family.”
(Emphasis added.) Our supreme court long ago construed the phrase “the estate of the other spouse” to include not only the property owned by the other spouse at the time of the divorce, but also the future income of the other spouse. See Smith v. Rogers, 215 Ala. 581, 112 So. 190 (1927). By that construction, a trial court may award a dependent spouse periodic alimony from wages earned and assets acquired by the other spouse after the marriage has been dissolved. See Hager v. Hager, 293 Ala. 47, 299 So.2d 743 (1974). In any event, in Alabama, any award of periodic alimony, by definition, comes out of “the estate of the other spouse.”
In the antenuptial agreement, each party acknowledges that he or she is aware of the value of “the Estate” of the other party, including the income, assets, and liabilities of the other party, “to which he or she is relinquishing a right.” The ante-nuptial agreement specifically refers to certain real property as the “separate property” of the wife. The antenuptial agreement also provides that all property individually owned by the parties before the marriage shall remain the respective separate property of each spouse. However, the antenuptial agreement does not provide that the term “separate property” shall be limited solely to property expressly described in the agreement or to property owned before the marriage. The antenuptial agreement states: ■ “Each party intends that each shall retain all right to manage, dispose of, own and acquire property to the same extent as if he or she remained unmarried.” That sentence signifies the intention of the parties that any property acquired after they entered into marriage would also be classified as “separate property,” subject only to a separate provision that allows the parties to elect to jointly own property.
Section 30-2-51(a) prohibits a court from considering, when determining whether to award alimony, “any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage.” Property acquired before the marriage or by inheritance or gift during the marriage and not used for the benefit of the marriage is considered “separate property.” See Black’s Law Dictionary 1571 (10th ed.2014). However, nothing in the antenuptial agreement indicates that the parties intended the phrase “separate property” to be so limited in meaning. To the contrary, the antenuptial agreement unambiguously states that each party relinquishes a right to “the Estate” of the other spouse, including the income of the other spouse. The fact that the parties, like our legislature, see Ala. Code 1975, § 30-2-51(b), opted to specifically address retirement benefits in the antenuptial agreement does not detract from that conclusion.
The antenuptial agreement contemplates that, in the event of a divorce, the wife would not have any claim to “the separate property” of the husband, includ *866 ing his “Estate,” the only source from which periodic alimony would be payable. Because “[t]he words of an agreement are to be given their ordinary meaning,” Vainrib v. Downey, 565 So.2d 647, 648 (Ala.Civ.App.1990), the antenuptial agreement unambiguously precludes the wife from claiming periodic alimony from the separate property of the husband, even though the parties did not use the term “alimony” in the antenuptial agreement. Unambiguous provisions in an antenuptial agreement should be enforced as written. Jones v. Jones, 722 So.2d 768, 769 (Ala.Civ.App.1998). The trial court erred in construing the antenuptial agreement so as to allow the wife to claim and to receive an award of periodic alimony from the husband, and, as to that error, its judgment must be reversed.
The husband also argues that the trial court erred in treating' a $205,000 payment he made to the wife as a gift instead of as consideration for a property settlement. The parties offered conflicting testimony regarding the circumstances for the $205,000 payment. Some of that conflicting testimony tended to prove that the husband had paid the wife the $205,000 as a gift and not as part of a property settlement. ■ Under the ore tenus rule, this court may not disturb a trial court’s findings of fact based on conflicting evidence. Kennedy v. Boles Invs., Inc., 53 So.3d 60, 67-68 (Ala.2010). The antenuptial agreement expressly states that each spouse may make a gift to the other spouse. Hence, the trial court did not commit any error on this point.[1]
We therefore affirm the judgment in part, reverse the judgment in part, and remand the case for further proceedings consistent with this opinion,
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. The husband also argues that the trial court erred in failing to give him credit against the periodic-alimony award for the $205,000 gift. Our reversal of the judgment insofar as it awards periodic alimony renders that argument moot.