PER CURIAM.
Danny Beck (“the husband”) appeals from the judgment of the Jefferson Circuit Court (“the trial court”) divorcing him from Nancy Capps Beck (“the wife”). The divorce judgment, among other things, awarded the wife $200,000 as a property settlement, ordered the husband to pay to the wife periodic alimony in the amount of $2,000 per month, and ordered the husband to pay the wife an attorney fee in the amount of $15,250.
The record indicates the following facts relevant to this appeal. On February 17, 2011, the wife filed in the trial court a complaint seeking a divorce based on incompatibility of temperament. The wife sought, among other things, a division of the parties’ real and personal property, periodic alimony, and alimony in gross. The wife requested that the husband be required to pay her “health insurance costs” and be responsible for the parties’ debts. The wife also sought an attorney fee.
Also on February 17, 2011, along with the complaint for a divorce, the wife filed a motion for a témporary restraining order, requesting, among other things, that the trial court restrain the husband from disposing of or hiding any money or property, including his company’s business assets. The following day, on February 18, 2011, the trial court entered an ex parte temporary restraining order to that effect, but it also permitted the husband to pay for ordinary, customary, and necessary personal and business expenses. On February 28, 2011, the husband answered and denied the material allegations in the wife’s complaint.
*688 On April 14, 2011, the wife filed a motion for, among other things, pendente lite support. On May 26, 2011, the trial court entered a consent order that, among other things, required the husband to pay the wife pendente lite support in the amount of $900 per month. That order further required the husband to pay to the wife an additional amount each month equal to 25% of his net earnings in excess of $3,000 per month. That order also required the husband to maintain the health insurance currently covering the wife.
On July 22, 2011, the wife filed a motion for contempt alleging that the husband had failed to pay pendente lite support as set out in the consent order.[1] On August 22, 2011, the husband filed a motion to modify the consent order alleging that a material change of circumstances had occurred because, he asserted, since the consent order had been entered, he was earning less money, his ability to pay support had been reduced, and his company had become unable to pay the health-insurance premiums and the wife’s health insurance had therefore lapsed. The husband sought termination of his pendente lite support obligation as well as his obligation to maintain health insurance for the wife. On December 5, 2011, the husband filed a motion to withdraw his motion to modify the consent order; that motion was granted on December 6, 2011.
On July 24, 2012, the wife filed a new motion for contempt alleging, among other things, that the husband had failed to pay pendente lite support as set out in the consent order. The wife also alleged that the husband had violated the temporary restraining order by disposing of property and by spending money “in excess of the usual, ordinary, necessary and customary day-to-day spending.” On August 24, 2012, the wife filed another motion for contempt alleging that the husband had canceled, and/or had allowed to lapse, the health insurance he was required to maintain for her under the consent order. On August 24, 2012, the trial court entered an order setting a hearing on the contempt motions for the same date the trial of the divorce action was scheduled.
On August 29, 2012, the trial court held a hearing at which it received ore tenus and documentary evidence. Although that hearing was not transcribed, the trial court later adopted the husband’s Rule 10(d), Ala. R.App. P., statement of the evidence. Based on the Rule 10(d) statement of the evidence and the exhibits that statement reflects were admitted into evidence,[2] the record contains evidence indicating the following facts.
The parties were married in June 1975. At the time of the hearing, they had been married more than 37 years; the wife was 54 years old and the husband was 56 years old. The parties have three grown children.
Since 2011, the husband had been living with his girlfriend (hereinafter referred to as “the paramour”). The husband had had three affairs during the parties’ marriage — the first affair occurred during the 1980s; the second affair occurred during *689 the late 1990s/early 2000s; and the third affair involves the paramour. The wife admitted that she had been aware of each affair at the time it occurred. The husband testified that the parties were not having marital problems at the time he met the paramour. The husband stated that he still loved the wife and that she is “the best person he knows.”
At the time of the hearing, the bank had foreclosed on the parties’ marital home; the wife was living with her parents, and, as noted earlier, the husband was living with the paramour.[3]
The wife testified that she had completed the 10th grade of high school but had not obtained a GED because, she said, the husband “would not let her.”[4] The wife did not work during the parties’ marriage. The husband testified that, toward the end of their marriage, he asked the wife to obtain a job.
At the time of the hearing, the wife was not working but had been “sitting” with her aunt “daily,” apparently to assist her parents in caring for her aunt. The wife’s aunt is in poor health and cannot take care of herself. The wife’s parents do not pay her for assisting with the care of her aunt, but they give her money “if she needs it.” The wife testified that she would like to live on her own, and her proposed monthly expenses totaled $4,507; approximately $1,250 of those expenses were allocated to rent.
The wife testified that, to her knowledge, she and the husband did not own any assets other than furniture and the husband’s business, Ace Masonry, Inc. (“Ace Masonry”). The record contains no evidence of the value of the furniture. The wife admitted she did not know whether Ace Masonry was still in business.
The wife has health problems. In 1989, the wife underwent brain surgery to treat seizures. In 2001, the wife underwent surgery to treat breast cancer. The wife takes medicine every day for her health issues. During the hearing, on cross-examination, the wife answered many of the questions by stating: “I don’t remember” or “I don’t understand the question.” The wife testified that she had applied for, but had been denied, “disability.”
The husband has a GED. He did not attend college. The husband is a brick mason. The husband testified about Ace Masonry, a company he started with his father and his brother, Johnny Beck (“the brother”), more than 20 years ago. The husband stated that the best years for Ace Masonry were around 2000 and that the best year was 2007. The husband explained that Ace Masonry is a subchapter “S” corporation and that his share of profits and losses flows through the corporation to him and is reported on his personal income-tax returns.
The husband testified that around 2000 Ace Masonry’s in-house bookkeeper embezzled money from the company. The husband stated that the bookkeeper was criminally prosecuted for the embezzlement.
*690 The husband explained that, after the embezzlement matter, the brother left the company. According to the husband, the brother left because Ace Masonry owed more than $1,000,000 to the government and vendors. The husband testified that, in 2004, the brother sued Ace Masonry and was awarded a judgment in the amount of $350,000. According to the husband, the brother then claimed that the judgment had not been satisfied, and, in July 2008, a court order was entered appointing David Mackle, a certified public accountant, as the custodian of Ace Masonry.
The husband testified that beginning in July 2008 and continuing thereafter the custodian has been in control of Ace Masonry. Pursuant to the July 2008 court order, all money received or spent by Ace Masonry has to go through the custodian; nothing that belonged to Ace Masonry can be sold or disposed of without the custodian’s consent.
In October 2011, upon motion of the husband, a court order was entered dissolving Ace Masonry; that order found Ace Masonry insolvent with “liabilities greatly exceeding assets.” Pursuant to that order, the custodian was granted authority to wind up the company’s affairs. The husband testified that Ace Masonry had not conducted business after the entry of the dissolution order. A certified copy of the dissolution order was admitted into evidence.
The wife testified about Ace Masonry’s assets. The husband testified about Ace Masonry’s assets and liabilities, and he introduced into evidence a few balance sheets reflecting Ace Masonry’s assets and liabilities. That asset/liability evidence is summarized below:
Date/Year Assets Debts
9/30/2007 $1,169,641.51 $924,676.00
9/30/2008 $1,026,601.75 $978,342.22
2/28/2010 $ 451,146.01 $829,854.66
2/28/2011 $ 274,019.21 $860,724.18
The balance sheets also contained an “Equity” section.
The husband testified that the 2007 assets included $857,516.56 in accounts receivable and that the 2008 assets included $738,603.46 in accounts receivable. The husband stated that he did not know whether the custodian had collected all the accounts receivable. The husband testified that one of Ace Masonry’s main customers had declared bankruptcy. The husband testified that the Internal Revenue Service (“IRS”) and a bank had liens against Ace Masonry.
According to the husband, in 2010 Ace Masonry performed a job at the Birmingham Airport but had not been paid for the job; it was a job for the military. The husband stated that he had contacted a “colonel in Montgomery” seeking his assistance in regaining possession of the equipment used on that job; the husband had not received any money or the return of the equipment. The husband testified that he had contacted the “sheriffs office” about the matter, but, he said, he was told it was a civil matter.
The husband testified that Ace Masonry had owned a building, but he did not know if the building had been foreclosed upon. The husband testified that he did not know whether Ace Masonry still had the assets listed on the balance sheets.
The husband testified that from 2007 through 2009 Ace Masonry paid him $2,000 per week. He stated that since Ace Masonry was a subchapter “S” corporation, $60,000 of the income listed on his tax returns was actually money Ace Masonry was paying to the IRS for back taxes.
The husband testified that he was willing to give the wife all the assets of Ace Masonry as a property settlement. The *691 wife testified that she did not want Ace Masonry or its assets.
Paula Walden, a certified public accountant, testified that she had worked on the Ace Masonry account for approximately six years. Walden stated that the balance sheets were prepared based on information provided by Ace Masonry employees; she stated that she did not reconcile the company’s bank statements. Walden stated that the values of the equipment, machinery, and vehicles on the balance sheets were historical values, not actual values. Walden testified that the IRS and a bank had filed liens against Ace Masonry’s assets. Walden stated that “the balance sheets taken as a whole showed the liabilities outweighed the assets.” Walden testified that, to her knowledge, Ace Masonry was no longer in business.
The husband testified that he still works as a brick mason, but now he works for his son at Beck Masonry. The husband stated that, although he had the ability to run his own company, he could not do so because he had “poor credit.” The husband testified that his income from January 1, 2012, through August 10, 2012, totaled $21,000. According to the husband, he gets paid $1,000 per week if he works a full week, but he stated that he is not paid every week. The husband stated that he is only paid after a job is completed and after the contractor pays Beck Masonry, which may be weeks later. The husband testified that most weeks he does not work a full week because he works outside and cannot work if the weather is bad. The husband stated that business has been slow because of the economy.
The husband testified that of the $1,000 per week, he brings home only about $810 per week after deducting from his weekly wages a tax withholding, an IRS garnishment, and pendente lite support. The husband testified that he gives money to the paramour to help with the house payment and that he buys groceries for the household. The husband stated that he has given money to his children and has paid bills for them.
The husband admitted that he has no proof of the amount of money in his possession. The husband testified that he did not have a checking account and that he cashed all checks because, he said, the “IRS was trying to take his money”; he also said he had not filed tax returns for 2011 but had filed for an extension to file those returns.
The husband is a member of Grayson Valley Country Club and plays golf every weekend. According to the husband, he performs in-kind services in lieu of paying membership dues. The husband admitted that he could work on the weekends to make more money but chose not to do so.
The husband testified about his health problems. The husband stated that he has high blood pressure and skin cancer. The husband testified that he could not afford to go to the doctor or to buy medicine because he does not have health insurance. The husband testified that he no longer has health-insurance coverage for the wife either.
On September 24, 2012, the trial court entered the divorce judgment granting the parties a divorce and ordering the husband to pay to the wife $200,000 as a property settlement and periodic alimony in the amount of $2,000 per month.[5] The trial court further ordered the husband to maintain health insurance for the wife for *692 36 months. Pursuant to the divorce judgment, the husband was responsible for all federal and state taxes and debts accumulated during the parties’ marriage, all his personal debts, any amounts owed as a result of foreclosure or repossession, and any business debts/expenses associated with Ace Masonry. The trial court also awarded the wife an attorney fee in the amount of $15,250.
In the divorce judgment, the trial court made the following specific findings of fact:
“The Court finds that the parties were married on June 14,1975. The [husband] would not allow the [wife] to finish her high school education and the [wife] never worked during the pendency of this marriage. The [wife] was totally dependent on the [husband]. The [husband,] along with two of his relatives, owned his own business. The Court is not sure that the business was ever dissolved, as no evidence was submitted to that effect. His average income from the business was $218,000 and the company had assets of over one million dollars.
“The [husband] had extra marital affairs, and is currently living with another woman. The [husband] also has a membership at Grayson Valley Country Club and plays golf every weekend. The Court finds that, as a direct result of the [husband’s] failure to abide by the temporary order in this case, the marital home was foreclosed, and the [wife’s] car was repossessed. The [husband] has allowed the [wife’s] health insurance policy to lapse in violation of the previous temporary order of the Court. The [wife] is residing with her elderly parents and her health is not good. She has epilepsy, and had brain surgery and breast cancer.”
The husband filed a timely motion to alter, amend, or vacate the divorce judgment; that motion was denied by the trial court. The husband timely appealed.
“When a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995). This ‘presumption of correctness is based in part on the trial court’s unique ability to observe the parties and the witnesses and to evaluate their credibility and demean- or.’ Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App.1999). This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court. Somers v. McCoy, 777 So.2d 141 (Ala.Civ.App.2000).”
Ryland v. Ryland, 12 So.3d 1223, 1225 (Ala.Civ.App.2009).
In addition, in Whorton v. Bruce, 17 So.3d 661, 664-65 (Ala.Civ.App.2009), we noted:
“ ‘ “[U]nder the ore tenus rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.” Transamerica [Commercial Fin. Corp. v. AmSouth Bank], 608 So.2d [375,] 378 [ (Ala.1992) ]. However, when the trial court improperly applies the law to facts, no presumption of correctness exists as to the trial court’s judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala.1996); Marvin’s, Inc. v. Robertson, 608 So.2d 391 (Ala.1992); Gaston [v. Ames ], 514 So.2d [877,] 878 [ (Ala.1987) ]; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985); League v. McDonald, 355 So.2d 695 (Ala.1978). “Questions *693 of law are not subject to the ore tenus standard of review.” Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala.2000). A trial court’s conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, 577 (Ala.1993). This court reviews the application of law to facts de novo. Allstate, 675 So.2d at 379 (“[Wjhere the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.”).’
“City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App.2002).”
As to the division of marital property and the award of alimony, this court has stated:
“The issues of property division and alimony are interrelated, and, therefore, they must be considered together on appeal. Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App.1996). When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App.2001); Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993); and Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish, 617 So.2d at 1038. In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and station in life; the length of the parties’ marriage; and the source, value, and type of marital property. Robinson v. Robinson, 795 So.2d 729, 734 (Ala.Civ.App.2001).”
Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009). Accord Ryland, 12 So.3d at 1233-34. Another factor the trial court may consider is the conduct of the parties with regard to the breakdown of the marriage. Ex parte Drummond, 785 So.2d 358, 363 (Ala.2000); Pate v. Pate, 849 So.2d 972, 976 (Ala.Civ.App.2002); and Myrick v. Myrick, 714 So.2d 311, 315 (Ala.Civ.App.1998).
As to alimony,
“[a]n award which exceeds a husband’s stated income does not automatically amount to an abuse of discretion by the trial court. Hurd v. Hurd, 397 So.2d 133 (Ala.Civ.App.1980). In making the initial award of alimony ..., the trial court may consider the parties’ ability to earn as opposed to the parties’ actual income. Ebert v. Ebert, 469 So.2d 615 (Ala.Civ.App.1985).”
Lones v. Lones, 542 So.2d 1244, 1246 (Ala.Civ.App.1989). As pointed out by the husband in his brief on appeal, the amount awarded “to one spouse should not ‘cripple’ the other spouse.” Daugherty v. Daugherty, 579 So.2d 1377, 1380 (Ala.Civ.App.1991).
As to the difference between periodic alimony and alimony in gross, in TenEyck v. TenEyck, 885 So.2d 146, 151-52 (Ala.Civ.App.2003), this court stated:
“Our supreme court has explained the difference between periodic alimony and alimony in gross. Hager v. Hager, 293 Ala. 47, 299 So.2d 743 (1974). Alimony in gross is considered ‘compensation for the [recipient spouse’s] inchoate marital rights [and] ... may also represent a *694 division of the fruits of the marriage where liquidation of a couple’s jointly owned assets is not practicable.’ [Hager ], 293 Ala. at 54, 299 So.2d at 749. An alimony-in-gross award ‘must satisfy two requirements, (1) the time of payment and the amount must be certain, and (2) the right to alimony must be vested.’ Cheek v. Cheek, 500 So.2d 17, 18 (Ala.Civ.App.1986). It must also be payable out of the present estate of the paying spouse as it exists at the time of the divorce. [Hager], 293 Ala. at 55, 299 So.2d at 750. In other words, alimony in gross is a form of property settlement. [Hager], 293 Ala. at 54, 299 So.2d at 749....
“Periodic alimony, on the other hand, ‘is an allowance for the future support of the [recipient spouse] payable from the current earnings of the [paying spouse].’ [Hager], 293 Ala. at 55, 299 So.2d at 750. Its purpose ‘is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage.’ O’Neal v. O’Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996) (emphasis added).”
On appeal, the husband first contends that the property settlement awarded to the wife amounts to an award of alimony in gross and that the trial court erred in awarding the wife $200,000 as alimony in gross because, he says, the trial court ignored undisputed evidence indicating that Ace Masonry had been dissolved and thus, he claims, the $200,000 alimony-in-gross award impermissibly exceeds the value of his present estate.
In making that argument, the husband asserts that the trial court’s finding — “The Court is not sure that [Ace Masonry] was ever dissolved, as no evidence was submitted to that effect. [The husband’s] average income from [Ace Masonry] was $218,000 and [Ace Masonry] had assets of over one million dollars.” — is erroneous. We agree.[6]
At the outset, we note that the wife testified that, to her knowledge, she and the husband did not own any assets other than Ace Masonry and furniture.[7] The wife admitted that she did not know whether Ace Masonry was still in business. As pointed out by the husband in his brief on appeal, he introduced into evidence a certified copy of the October 2011 court order dissolving Ace Masonry. The wife presented no evidence to contradict that court order.
The husband also refers this court to the substantial amount of evidence contained in the record regarding Ace Masonry’s financial problems. Although the wife testified about Ace Masonry’s assets during *695 the years 2007, 2008, 2010, and 2011, the husband testified about both the assets and the liabilities of the company during those years. He also introduced into evidence balance sheets reflecting both the assets and the liabilities of the company during those years. The husband correctly points out that, “considering the value of [Ace Masonry’s] assets without considering its liabilities has no more relevance to a property division than trying to divide the equity in a residence by only considering the market value of the residence without the mortgage indebtedness encumbering it.”
The most recent balance sheet for Ace Masonry, dated February 28, 2011, that was offered into evidence, reflects that the liabilities of Ace Masonry exceeded its assets, which included bank and tax liens, by almost $600,000. Ace Masonry had been operated by a custodian appointed by court order since 2008, three years before the wife filed for divorce. The October 2011 dissolution order indicates that, upon motion of the husband, Ace Masonry was dissolved because it was “insolvent, with liabilities far exceeding assets.” At the time of the hearing, the husband said he no longer worked for Ace Masonry but performed masonry work for a business owned by the parties’ son. During the hearing, the wife declined to receive all the assets of Ace Masonry as a property settlement. The foregoing evidence indicated that Ace Masonry was not an ongoing concern and that it had been dissolved because it had a negative value.
The trial court further found that Ace Masonry had assets worth more than $1,000,000; however, the February 28, 2011, balance sheet indicated that Ace Masonry had assets of approximately $275,000. Moreover, the judgment failed to note that that balance sheet indicated that Ace Masonry had liabilities of approximately $860,000 on that same date. The wife presented no evidence to substantiate the value of Ace Masonry that differed from the evidence offered by the husband. Even if the trial court found that the husband’s testimony lacked credibility,[8] the record contains nothing to indicate that Ace Masonry was worth the $1,000,000 the trial court decided it was worth based, apparently, on a consideration of its former assets alone.
The burden of proving the value of marital property rests with both parties. Edwards v. Edwards, 26 So.3d 1254, 1261 (Ala.Civ.App.2009). We are well aware that in some divorce proceedings trial judges frequently suspect that parties have more assets than the parties are willing to acknowledge and that that suspicion is often correct; however, in the present case, if this court were to affirm the $200,000 alimony-in-gross award, we would not be deferring to the trial court’s evaluation of the witnesses and the evidence, as the ore terms rule requires, but would be yielding to speculation.
“Alimony in gross” must be payable out of the present estate of the paying spouse as it exists at the time of the divorce. Lacey v. Lacey, 126 So.3d 1029, 1031 (Ala.Civ.App.2013), cert denied, 126 So.3d 1035 (Ala.2013). In this case, the record does not contain sufficient evidence from which the trial court reasonably could have determined that Ace Masonry had not been dissolved or that it had a value of more than $1,000,000. Thus, the record does not contain sufficient evidence from which *696 the trial court reasonably could have inferred that the husband’s present estate, based on the value of Ace Masonry, contains $200,000, much less a greater amount from which $200,000 could be equitably deducted. Accordingly, we reverse the trial court’s judgment as to this issue and remand the cause for it to reconsider its alimony-in-gross award without regard to the foregoing erroneous findings.
Next, the husband contends that the trial court erred in awarding the wife periodic alimony in the amount of $2,000 per month because, he says, the evidence established that he cannot afford that amount. “[B]ecause property-division and alimony awards are considered to be interrelated, we often reverse both aspects of the trial court’s judgment so that [the trial court] may consider the entire award again upon remand.” Redden v. Redden, 44 So.3d 508, 513 (Ala.Civ.App.2009). Accordingly, because we are reversing the trial court’s judgment with respect to the award of alimony in gross, we also reverse the trial court’s judgment with respect to the award of periodic alimony so that the trial court can consider both the award of alimony in gross and the award of periodic alimony again on remand. See Reddest, supra.
Regarding an award of periodic alimony in this case, we note that the trial court found the wife, who had never worked, to be totally dependent on the husband. The wife’s proposed monthly expenses totaled $4,507.
The only evidence contained in the record regarding the husband’s current income and expenses at the time of the hearing was his own testimony; the husband testified that, at most, he earned $1,000 per week and that he brought home only approximately $310 after deducting a tax withholding, an IRS garnishment, and pendente lite support. Although the husband failed to offer any documentary evidence regarding his present financial condition, the wife also failed to offer any evidence to dispute the husband’s testimony regarding his current income and expenses. The husband testified that he is a member of a country club and plays golf every weekend instead of earning more money.
The husband admitted that he had no proof of the amount of money in his possession. According to the husband, he did not have a checking account; the husband stated that he cashed all his checks because, he said, the “IRS was trying to take his money.” The husband stated that he had not filed tax returns for 2011 but had obtained an extension to file those returns. Although the record contains evidence from which the trial court reasonably could have determined that the husband earned, or had the ability to earn, more money than he said he did, see, e.g., Ryland v. Ryland, 12 So.3d at 1235, as stated earlier, because we are reversing the trial court’s award of alimony in gross, we are also reversing the periodic-alimony award.
Lastly, the husband contends that if this court reverses the award of alimony in gross and/or the periodic-alimony award, it also should reverse the attorney-fee award in the amount of $15,250. “This court reviews an award of an attorney fee on an abuse-of-discretion standard.” Mahaffey v. Mahaffey, 806 So.2d 1286, 1292 (Ala.Civ.App.2001). In determining whether to award an attorney fee and the amount of the fee, the trial court must consider factors such as the earning capacities of the parties, the results of the litigation, the parties’ financial circumstances, and the conduct of the parties. Korn v. Korn, 867 So.2d 338, 346-47 (Ala.Civ.App.2003); Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996). In the pres *697 ent case, because we have reversed the trial court’s award of alimony in gross and its periodic-alimony award, and because we have determined that no evidence supports a determination that Ace Masonry had not been dissolved or that it had assets of more than $1,000,000, we reverse the trial court’s award of an attorney fee and remand the cause for it to consider its attorney-fee award without regard to the foregoing findings.
The wife’s request for an attorney fee on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. In her July 22, 2011, motion for contempt, and in her motions for contempt filed thereafter, the wife requested an attorney fee.

. The record contains other exhibits that the Rule 10(d) statement of the evidence does not reflect were admitted into evidence; we consider as evidence only the exhibits that that statement reflects were admitted into evidence. The appellant bears the burden of ensuring that the record contains sufficient evidence to warrant reversal. In re Coleman, 469 So.2d 638, 639 (Ala.Civ.App.1985); Lee v. Lee, 547 So.2d 1188, 1189 (Ala.Civ.App.1989). This court is bound by the evidence contained in the record. King v. Smith, 288 Ala. 215, 217, 259 So.2d 244, 246 (1972).

. During the pendency of the divorce proceedings, the Lexus automobile the wife had been driving was repossessed. The wife subsequently purchased a truck owned by the husband's business, Ace Masonry, Inc., from David Mackle, who had been appointed custodian of the business. The husband testified that his truck was old and needed repairs, which, according to the husband, he could not afford.

. As pointed out by the husband in his brief on appeal, the "certificate of divorce” completed by the wife's attorney and filed with the trial court on February 17, 2011 (i.e., the same date the wife filed the divorce complaint), indicates that the wife has a GED.

. The trial court also ordered the husband to pay a pendente lite support arrearage in the amount of $600.

. The husband also asserts that the trial court’s finding that the marital home had been foreclosed as a direct result of the husband’s failure to abide by the temporary restraining order was erroneous. In support of that assertion, the husband refers this court to the wife’s exhibit 4; however, the Rule 10(d) statement of the evidence does not indicate that that exhibit was admitted into evidence; therefore, that exhibit is not included as part of the evidence in the record. This court is bound by the evidence contained in the record and cannot consider statements in a brief that are not supported by the evidence in the record. King v. Smith, 288 Ala. 215, 217, 259 So.2d 244, 246 (1972). We note, however, the wife testified, and the evidence indicates, that, at some point, the bank had foreclosed on the marital home.

. We note that, although the record contains no evidence of the value of the parties’ furniture, the only property-division award at issue on appeal is the $200,000 alimony-in-gross award.

. We recognize that "[i]t is the duty of the trial court, which had the opportunity to observe the witnesses and their demeanors, and not the appellate court, to make credibility determinations and to weigh the evidence presented.” Ex parte Hayes, 70 So.3d 1211, 1215 (Ala.2011).