STUART, Justice
(dissenting).
The majority opinion affirms the judgment of the DeKalb Circuit Court declaring Mountain View Memory Gardens <& Mausoleum, Inc. (“the corporation”), to be insolvent and ordering its liquidation and the transfer of its assets to MVMG, LLC (“the LLC”), subject to certain conditions set forth in the trial court’s order. However, because the corporation was certified by the Alabama Department of Insurance (“the Department”) as a seller of preneed contracts pursuant to the Alabama Pre-need Funeral and Cemetery Act, § 27-17A-1 et seq., Ala.Code 1975 (“the Pre-need Act”), the trial' court, in liquidating the corporation, was required to maximize financial value for those individuals holding outstanding preneed contracts. It is undisputed that Corner Stone Funeral Chapel, Inc. (“Corner Stone”), had submitted an offer to take over the operations of the corporation that would provide more financial value to those preneed-contract hold *634 ers than the offer submitted by the LLC; accordingly, the trial court exceeded its discretion in transferring the corporation’s assets to the LLC. I must therefore dissent.
In deciding whether the trial court should have accepted the proposal of the LLC or the proposal of Corner Stone, it must first be determined what criteria the trial court should have employed in evaluating the competing proposals. The LLC premises its argument on the assumption that the superior proposal is the proposal “better calculated and more likely to serve the interests of the stakeholders in [the cemetery].” The LLC’s brief, p. 9. Accordingly, it summarizes its argument as follows:
“The evidence showed that Corner Stone’s offer provided less security and certainty for the future maintenance of the Mountain View [Memory Gardens] cemetery. The evidence further showed that Corner Stone’s offer to provide grave markers at no further cost to holders of existing preneed contracts calling for the same was ill conceived and not economically feasible. There was introduced more than sufficient evidence from which the trial court rightly concluded that [the] LLC’s offer was much less likely than Corner Stone’s to result in the Mountain View [Memory Gardens] cemetery operation again falling into economic ruin, disrepair, and receivership, thus better serving the paramount interest of the cemetery stakeholders.”
The LLC’s brief, pp. 9-10. Thus, it is apparent that the LLC considers the “cemetery stakeholders” to be a broad group of people, including those with friends and family already interred or buried there and those -people with plans to have themselves — or friends or family— buried or interred there at some point in the future, regardless of whether that burial or internment is the subject of an existing preneed contract. The LLC argues that these stakeholders will be better served under its proposal because that proposal, the LLC claims, is better for the long-term economic health and viability of the cemetery.
In contrast, Corner Stone and Jim Ri-dling, the commissioner of the Department, argue that the superior proposal is the proposal that better serves a much more narrow class of stakeholders — those who have purchased or who stand to benefit from outstanding preneed contracts sold by the corporation before it became insolvent.[4] They argue that the legislature’s purpose in enacting the Preneed Act is evident from the language of the Act— to provide a mechanism for protecting the investments of those Alabamians who choose to purchase preneed contracts. The various statutes constituting the Pre-need Act, such as § 27-17A-10, Ala.Code 1975 (requiring sellers of preneed contracts to be certified), § 27-17A-13, Ala. Code 1975 (requiring such sellers to place a portion of the funds received from the sale of a preneed contract into trust), and § 27-17A-15, Ala.Code 1975 (authorizing the Department to examine the business of such sellers as often as is deemed necessary), Corner Stone and Commissioner Ri-dling argue, are all designed with that purpose in mind. I agree.
In a liquidation proceeding conducted pursuant to the Preneed Act, it is not the duty of a court, when considering multiple proposals to take over the operations of *635 an insolvent seller of preneed contracts, to decide simply which proposal is better for a community or which proposal will result in a “better” run cemetery according to some undefined criteria. Rather, it is the duty of the court in such a situation to take the action that will better achieve the purpose of the Preneed Act — to protect the financial interests of holders and beneficiaries of preneed contracts. That this is the purpose of the Preneed Act is manifested by the fact that it is the Department that supervises the liquidation of any certified seller of preneed contracts and that, pursuant to § 27-17A-17, Ala. Code 1975, it does so subject to § 27-32-1 et seq., Ala.Code 1975, which chapter governs the rehabilitation, reorganization, conservation, and liquidation of an insolvent insurance business. Sections 27-32-37 through 27-32-41 of that chapter establish that, in the liquidation process, policyholders are preferred creditors and receive first priority during liquidation, subject to limited exceptions not applicable here. In the context of this case — the liquidation of a certified seller of preneed contracts — those individuals who have purchased preneed contracts are analogous to insurance policyholders inasmuch as they have purchased a contract, or “policy,” providing for a future benefit. Accordingly, they are given preferred status, and the object of the liquidation process is to make them whole above any other interested party or claimant. For that reason, a trial court overseeing the liquidation process of a certified seller of preneed contracts should make its decisions based on how to best preserve value for those holders of preneed contracts. Protecting their investments is, after all, the reason the Preneed Act was enacted, and the relevant statutes should be “liberally construed” to achieve that goal. § 27-32-2, Ala.Code 1975.
However, although the relevant statutes are unambiguous, the majority opinion instead adopts the viewpoint that the trial court is empowered to simply decide what “is in the best interest of those concerned” and considers all “those concerned” to include “the general public [and] especially the local community.” 170 So.3d at 630. Although this broad class of people no doubt includes citizens who are “concerned” about the cemetery in the general sense that they take pride in the success and appearance of their community, their level of “concern” is insufficient from a legal perspective — the Preneed Act, read in conjunction with the statutes governing insolvent insurance businesses, clearly indicates that the only “concern” that matters in a liquidation proceeding of a corporation such as the one here is the financial concern of those who hold preneed contracts. The majority opinion supports its rationale that the trial court was authorized to consider community sentiment in making its decision by citing § 27-17A-17(b), Ala.Code 1975, which allows the commissioner of the Department to seek liquidation of a certified seller of preneed contracts when the seller’s continued operation would be hazardous to purchasers or beneficiaries of preneed contracts, “or to the people of this state.” However, § 27-17A-17(b) only sets forth the circumstances in which liquidation is authorized; it does not bear on how that liquidation should be accomplished or what factors should govern the liquidation process. Section 27-17A-17(a), Ala.Code 1975, does address that issue and provides that such a liquidation should be conducted under the supervision of the commissioner of the Department “who shall have all powers with respect thereto granted to the commissioner under Chapter 32 with respect to the liquidation of insurance companies.” As already explained supra, it is evident from § 27-32-1 et seq. that policyholders, or *636 preneed-contract holders in this context, are a preferred class, and a trial court should make its decisions during the liquidation process based on how to best preserve value for that preferred class — not based on the desires of individuals who have no legally recognizable interest in the proceedings.
In this case,, it is undisputed that the proposal put forth by Corner Stone promises more value to those holding outstanding preneed contracts sold by the corporation than the proposal submitted by the LLC. Denise Azar, the Department employee responsible for the cemetery while it was under the Department’s control, stated as much in her testimony and stated that, for that reason, the Department endorsed Corner Stone’s proposal. Corner Stone’s owner, William Dalton, also testified that Corner Stone’s proposal was worth approximately $60,000 more to those holders of preneed contracts than the LLC’s proposal. Even the LLC’s sole member, Keary Chandler, when asked, willingly agreed that Corner Stone’s proposal offered more benefits, and he in fact estimated those benefits to be worth far more than $60,000:
“Q. Well, what would be your estimate that it would cost him — or cost you had you included that in your offer — to furnish these markers?
“A. I’d say more like $150,000.
“Q. Okay. So, in your judgment then, the offer that he’s made would benefit the contract holders — assuming he carries those contracts out and does [what] he says he’ll do— would be valued at $150,000 more than what yours would be?
“A. Yes.”
The greater value of Corner Stone’s proposal being established without dispute, it was due to be accepted. Any community sentiment in favor of keeping Mountain View Memory Gardens under the more “local” control of Rainsville Funeral Home, which Chandler owns and operates, or any belief that Rainsville Funeral Home was in some way entitled to Mountain View Memory Gardens because it has been maintaining it under contract with the receiver since this process began is irrelevant.[5] The object of the applicable statutes is to make sure that those who purchased preneed contracts from the corporation receive what they purchased, and it is undisputed that Corner Stone’s proposal is preferable in that regard.
We further note that although the record contains much speculation and insinuation that it will be impossible for Corner Stone to actually deliver what it promises in its proposal, there is no credible evidence that would indicate that. See Heisz v. Galt Indus., Inc., 98 So.3d 918, 931 (Ala.2012) (stating that “speculation is an insufficient basis upon which to support a judgment”). The competent evidence in the record indicates that Corner Stone has successfully operated a funeral home since' 1998 and has since grown its business to include three cemeteries. Moreover, Corner Stone has previously purchased a cemetery out of a Department-supervised receivership in what Dalton described as a *637 “[v]ery similar situation,” and its performance with regard to that cemetery has apparently been of sufficient quality that the Department, which examines, audits, and receives annual reports from certificate holders, is recommending Corner Stone to take over another insolvent cemetery and its preneed contracts.
In fact, the trial court itself recognized the absence of any evidence that would indicate Corner Stone could not provide the benefits promised in its proposal, stating that “no evidence is presented that Mr. Dalton, himself, couldn’t follow through. Now Ms. Mince couldn’t follow through, clearly, or we wouldn’t be here. But what evidence is there that Mr. Dalton can’t follow through?” Once the speculation is properly discarded, there is none. Indeed, it appears from the record that Corner Stone could have the financial assets of Wal-Mart Stores, Inc., and General Motors Company combined — the majority has not and cannot point to any evidence in the record that would indicate otherwise. The only testimony questioning Corner Stone’s financial capability comes from a competitor and an individual who admittedly favors that competitor; however, that testimony has no factual basis and is accordingly nothing more than speculation. Ex parte Nathan Rodgers Constr., Inc., 1 So.3d 46, 52 (Ala.2008). Unfortunately, the majority has now elevated that speculation to the realm of competent evidence, notwithstanding this Court’s longstanding precedent indicating that speculation is not evidence that can support a judgment. See, e.g., Heisz, 93 So.3d at 931 (stating that “speculation is an insufficient basis upon which to support a judgment”).
Moreover, the fact that we are reviewing the trial court’s judgment under the ore tenus rule, as opposed to reviewing it de novo, should have no effect on the ultimate outcome. A judgment entered based on ore tenus testimony must still be supported by credible evidence, Joseph v. MTS Inv. Corp., 964 So.2d 642, 646 (Ala.2006), and statements that reflect speculation and lack of personal knowledge do not constitute credible evidence. Ex parte Professional Bus. Owners Ass’n Workers’ Comp. Fund, 867 So.2d 1099, 1101-1102 (Ala.2003). There is no evidence in the record indicating that the proposal made by the LLC will provide more financial benefits to the remaining preneed-contract holders than the proposal made by Corner Stone, nor is there any evidence — as opposed to speculation — in the record indicating that Corner Stone lacks the capability to fulfill the terms of its proposal. To the contrary, it is undisputed that the proposal made by Corner Stone offers greater value to preneed-contract holders, and those parties with some actual knowledge of Corner Stone’s finances — Dalton and the Department — are satisfied that Corner Stone has the wherewithal to fulfill the terms of its proposal. It is accordingly clear that the' goals and intents of the Preneed Act and relevant liquidation statutes will be more fully realized by the acceptance of the Corner Stone proposal. By affirming the judgment of the trial court in favor of the LLC, this Court is not deferring to the trial court’s evaluation of the witnesses and evidence but is instead yielding to speculation. Beck v. Beck, 142 So.3d 685, 695 (Ala.Civ.App.2013). Accordingly, I must dissent. I would reverse the trial court’s order and remand the cause for the entry of a liquidation order directing the Department to transfer the corporation’s assets to Corner Stone.
BOLIN, J., concurs.

. Commissioner Ridling filed a brief on appeal; however, he is not named as an appel-lee on the notice of appeal. See supra note 2.

. It bears noting that the interests of those in the Rainsville community desiring to keep Mountain View Memory Gardens under local management are not necessarily aligned with those holding preneed contracts purchased from the corporation. That is, those Rains-ville residents with.future cemetery business might prefer to take care of it in Rainsville rather than make the approximately 17-mile drive to Corner Stone’s offices in Ider; however, the holder of a preneed contract who stands to save $600 or more that he or she would otherwise have to spend on a grave marker that had already been paid for once would presumably be less hesitant to make that drive.