Rel: October 4, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2024

_____

### CL-2024-0064

_____

**James Stanley Whitehurst**

**v.**

**Janet Patterson Whitehurst**

**Appeal from Lauderdale Circuit Court**
**(DR-19-900002.01)**

LEWIS, Judge.

James Stanley Whitehurst ("the former husband") appeals from a judgment entered by the Lauderdale Circuit Court ("the trial court") in a modification action initiated by him to modify the judgment that divorced

him from Janet Patterson Whitehurst ("the former wife").  We affirm the

trial court's judgment.

Procedural History

The parties were divorced on October 1, 2021, by a judgment which

incorporated an agreement of the parties.  That judgment included the

following provisions:

> "6.   RETIREMENT: The [former wife] is awarded a
> monthly share of the pension benefit payable to the [former
> husband] which he currently receives under the Rules and
> Regulations of the TVA [Tennessee Valley Authority]
> Retirement System.  The [former wife] is entitled to receive
> $2,900.00 per month, with applicable cost of living
> adjustments, to the extent the [former husband] would have
> been eligible for such adjustments if payment were not being
> made hereunder to the [former wife].   A separate DRO
> (Domestic Relations Order) shall issue to TVA Retirement
> Systems directing the payment of the [former wife's] share
> directly to the [former wife].

> "....

> "Pending administrative review and entry of the DRO
> by TVA to provide for payment to the [former wife] of the sum
> set forth above, the [former husband] shall be responsible for
> making direct payment to the [former wife] in the sum of
> $2,900.00 beginning October 1, 2021 and each month
> thereafter on the first day of the month until the DRO goes
> into effect."

In the domestic-relations order subsequently entered on October 4,

2021 ("the DRO"), the trial court wrote, "[i]t is the intent of the Court that

2

the provisions of [the DRO] operate as an effective assignment of a portion of [the former husband's] interest in the [retirement plan]." The DRO further provided:

> "E. Pursuant to IRC Section 414(p)(1)(A)(i), and in accordance with the domestic relations law of this State, [the former wife] is hereby assigned a portion of the [former husband's] right, title and interest in and to the [retirement plan].
>
>> "1. (a) Division of a Recurring Monthly Benefit. Upon [the former husband's] eligibility for and receipt of recurring monthly benefits under the Rules and Regulations of the TVA Retirement System, the [former wife] is entitled to $2,900.00 per month, with applicable cost of living adjustments, to the extent the [former husband] would have been eligible for such adjustments if payment were not being made hereunder to the [former wife]. The TVA Retirement System is directed to pay [the former wife's] share directly to the [former wife]."

On June 16, 2023, the former husband filed a petition to modify the divorce judgment. He argued that the award of a portion of his retirement benefits to the former wife "constituted an award of periodic alimony and [was] thereby modifiable." The former wife filed a motion to dismiss the former husband's petition on July 19, 2023, arguing that the award of a portion of the former husband's retirement benefits was instead a division of property and was therefore unmodifiable. On July

3

20, 2023, the trial court entered a judgment granting the former wife's motion to dismiss. That judgment stated,

> "It does not appear that the form or the substance of the [award] is related in any way to periodic alimony with the exception that it is dispersed on a monthly basis. It appears to be a clear division of retirement proceeds in a typical divorce agreement. To allow a party to request a modification under these circumstances would be unjust and inequitable."

The former husband filed a timely motion to alter, amend, or vacate that judgment, arguing that the trial court erred by failing to hold a hearing on the former wife's motion to dismiss and that his petition was "not based solely on the monthly allocation of disbursement." He asserted that the payments ordered by the trial court were "current income" to the former husband at the time the disbursements began, suggesting that the award was in the nature of periodic alimony. On July 21, 2023, the trial court granted the former husband's postjudgment motion, rescinded its judgment dismissing the former husband's petition to modify, and set the former wife's motion to dismiss for a hearing.

On December 22, 2023, after the hearing, the trial court again granted the former wife's motion to dismiss the petition to modify the divorce judgment, on the basis that the trial court was "without legal authority or jurisdiction to grant the relief requested by the [former

4

husband]" because the award was the result of an unmodifiable property division. On January 25, 2024, the former husband filed his notice of appeal.

## Standard of Review

The former husband argues that the trial court erred in ruling that it lacked jurisdiction to modify its award of a portion of his retirement benefits. According to the former husband, the trial court's ruling was based on an incorrect finding that the award was a division of property, i.e., an unmodifiable award of alimony in gross,[1] rather than a modifiable award of periodic alimony. The former husband's argument presents a question of law. We review questions of law de novo, without affording any presumption of correctness to the trial court's decision. Rose v. Rose, 70 So. 3d 429, 431 (Ala. Civ. App. 2011).

## Discussion

---

[1]Under Alabama caselaw, an award of alimony in gross is considered to be "a form of property settlement." Daniel v. Daniel, 841 So. 2d 1246, 1250 (Ala. Civ. App. 2002) (citing Hager v. Hager, 293 Ala. 47, 54, 299 So. 2d 743, 749 (1974)). "Alabama law does not authorize a trial court to modify a property division more than 30 days after the entry of the final judgment effectuating such division." LaFontaine v. LaFontaine, 294 So. 3d 774, 777 (Ala. Civ. App. 2019).

In <u>Wikle v. Boyd</u>, 297 So. 3d 1255, 1261-62 (Ala. Civ. App. 2019), this court stated:

"We have often been tasked with determining whether an award to a spouse is periodic alimony or alimony in gross. <u>See</u>, <u>e.g.</u>, <u>Hood v. Hood</u>, 76 So. 3d 824, 831 (Ala. Civ. App. 2011); <u>Daniel v. Daniel</u>, 841 So. 2d 1246, 1250 (Ala. Civ. App. 2002); <u>Singleton v. Harp</u>, 689 So. 2d 880, 882 (Ala. Civ. App. 1996); <u>Laminack v. Laminack</u>, 675 So. 2d 479, 482 (Ala. Civ. App. 1996); and <u>Boley v. Boley</u>, 589 So. 2d 1297, 1299 (Ala. Civ. App. 1991). Although the label placed on an award may be considered in determining what type of alimony has been awarded, <u>see</u>, <u>e.g.</u>, <u>Boley</u>, 589 So. 2d at 1299, '[t]he substance of the award takes precedence over its label.' <u>Cheek v. Cheek</u>, 500 So. 2d 17, 19 (Ala. Civ. App. 1986). Furthermore, '[t]he source of payment and its purpose are of prime importance.' <u>Lacey v. Ward</u>, 634 So. 2d 1013, 1015 (Ala. Civ. App. 1994). Thus, an appellate court considering the type of alimony awarded in a divorce agreement or judgment must examine the substance of the award under the principles governing both types of alimony.

"'Our supreme court has explained the difference between periodic alimony and alimony in gross. <u>Hager v. Hager</u>, 293 Ala. 47, 299 So. 2d 743 (1974). Alimony in gross is considered "compensation for the [recipient spouse's] inchoate marital rights [and] … may also represent a division of the fruits of the marriage where liquidation of a couple's jointly owned assets is not practicable." <u>Hager v. Hager</u>, 293 Ala. at 54, 299 So. 2d at 749. … In other words, alimony in gross is a form of property settlement. <u>Hager v. Hager</u>, 293 Ala. at 54, 299 So. 2d at 749. An alimony-in-gross award is generally not modifiable. <u>Id.</u>

"'Periodic alimony, on the other hand, "is an allowance for the future support of the [recipient spouse] payable from the current earnings of the [paying spouse]." Hager v. Hager, 293 Ala. at 55, 299 So. 2d at 750. Its purpose ... "is to support the former dependent spouse and to enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until the spouse is self-supporting or maintaining a status similar to the one enjoyed during the marriage." O'Neal v. O'Neal, 678 So. 2d 161, 165 (Ala. Civ. App. 1996) (emphasis added). Periodic alimony is modifiable based upon changes in the parties' financial conditions or needs, such as an increase in the need of the recipient spouse, a decrease in the income of the paying spouse, or an increase in the income of the recipient spouse. See Tibbetts v. Tibbetts, 762 So. 2d 856, 858 (Ala. Civ. App. 1999). The paying spouse's duty to pay periodic alimony may be terminated by petition and proof that the recipient spouse has remarried or is cohabiting with a member of the opposite sex. Ala. Code 1975, § 30-2-55.' Daniel v. Daniel, 841 So. 2d 1246, 1250 (Ala. Civ. App. 2002)."

Section 30-2-51, Ala. Code 1975, provides that a marital estate includes the retirement or pension benefits accumulated by the parties during the marriage. However, a trial court also has the discretion to treat retirement benefits as a source of payment for periodic alimony, rather than a marital asset subject to division. See Spuhl v. Spuhl, 99 So. 3d 339, 342 (Ala. Civ. App. 2012). This court has considered many cases in which the question presented was whether an award of

7

retirement benefits constituted an award of periodic alimony or alimony in gross.  See, e.g., Rose v. Rose, 70 So. 3d 429 (Ala. Civ. App. 2011) (holding that the award, which the judgment referred to as a "property settlement," was actually an award of periodic alimony); Singleton v. Harp, 689 So. 2d 880 (Ala. Civ. App. 1996) (holding that the award was, in accord with its label, a property settlement and not periodic alimony); Stockbridge v. Reeves, 640 So. 2d 947 (Ala. Civ. App. 1994) (holding that the award was, in accord with its label, a property settlement and not periodic alimony).

We begin by addressing the form of the award.  In this case, both the divorce judgment and the DRO described the award to the former wife of the former husband's retirement benefits as a "division" of the benefits; neither document included the word "alimony."  In the judgment, before the provisions pertaining specifically to retirement, which are reproduced above, the trial court included the following:

> "4.    PERSONAL PROPERTY DIVISION:  The parties shall divide their tangible personal property in the following manner:
>
> "....
>
> "C) Financial Assets: Each party shall own and possess all financial assets held in their

8

> separate name, including checking accounts, savings accounts, stocks, bonds, brokerage accounts, retirement accounts, pensions, profit sharing plans, life insurance policies, annuities, or any other form of investment or non-tangible financial asset <u>EXCEPT for the division of retirement benefits maintained by the [former husband] from his employment with TVA, whose division is outlined below.</u>"

(Emphasis added; capitalization in original.) The DRO likewise purported to "assign" to the former wife the former husband's right to receive a portion of his retirement benefits. Therefore, based on the label given the award and the context surrounding it in the divorce judgment, its purpose was clearly to be a division of the former husband's retirement benefits as a marital asset, not periodic alimony.

This court has held that "[p]eriodic alimony is also distinguishable from alimony in gross because it is treated as taxable income to the party receiving the award" and is tax deductible for the paying party. <u>Rose v. Rose</u>, 70 So. 3d 429, 433 (Ala. Civ. App. 2011) (citing <u>Adkins v. Adkins</u>, 61 So. 3d 1071, 1077 (Ala. Civ. App. 2010)). The DRO in this case stated that, "[f]or tax reporting purposes, benefits paid to [the former wife] pursuant to this Order shall be reported as income to the [former wife]."

9

Based on that provision, the former husband argues that the award of retirement benefits was intended to be an award of periodic alimony.

As the former wife's brief points out, however, the provision of the Internal Revenue Code that provided that alimony payments were deductible by the payor spouse and required that they be reported by the receiving spouse as annual gross income was repealed by the Tax Cuts and Jobs Act of 2017 (the "TCJA"), Pub. L. No. 115-97, 131 Stat. 2054 (2017), which repealed 26 U.S.C. § 71 and 26 U.S.C. § 215 (Repealed). Under the TCJA, alimony payments made pursuant to divorce judgments entered after December 31, 2018, are no longer taxable income to the recipient nor tax deductible by the payor. See 2 Crittenden and Kindregan, Alabama Family Law § 21:6 (2d ed. 2015); see also Kimberly S. Krieg & Stephanie L. Tang, Calculating "Income" for Domestic Support Obligations in the Wake of the Covid-19 Pandemic, 74 Okla. L. Rev. 653, 660 (2022). Consequently, alimony payments are also not considered gross income or tax deductions under the income-tax scheme of this State. See § 40-18-14(a)(1), Ala. Code 1975, and § 40-18-15(17), Ala. Code 1975 (providing that alimony payments are considered income or are tax deductible to the extent provided by federal law).

The trial court's divorce judgment was entered on October 1, 2021. Therefore, the provision in the DRO requiring that the former wife pay taxes on her award supports the trial court's characterization of the award as a division of property.

We turn next to the substance of the award. "Although those pronouncements in the divorce agreement are a clear indication of the parties' intent that the award be considered alimony in gross or a property settlement, they are not sufficient to end our inquiry. Instead, we must consider the substance of the monetary obligations created by [the judgment]." Wikle, 297 So. 3d at 1262-63 (citation omitted).

> "[I]t is well settled that 'the substance of the award takes precedence over the form or label.' Kenchel v. Kenchel, 440 So. 2d 567, 569 (Ala. Civ. App. 1983); see also Kelley v. State Dep't of Revenue, 796 So. 2d 1114, 1117 (Ala. Civ. App. 2000) (labels are not controlling on the question of the true nature of the obligation). Therefore, we must consider the nature of the former wife's award to determine its classification."

Rose, 70 So. 3d at 432. Notwithstanding the foregoing, when this court interprets the effect of a divorce judgment that incorporates an agreement of the parties, we consider the intent of the parties for that agreement. See, e.g., Vainrib v. Downey, 565 So. 2d 647, 648 (Ala. Civ. App. 1990).

> "The words of an agreement are to be given their ordinary meaning, and the intention of the parties is to be derived from the provisions of the contract. Smith v. Citicorp Person-to-Person Financial Centers, Inc., 477 So. 2d 308 (Ala. 1985). When the provisions are certain and clear, it is the duty of the trial court to analyze and determine the meaning of the provisions. Pate v. Merchants National Bank of Mobile, 428 So. 2d 37 (Ala. 1983)."

Id. at 648.

This court has, in some cases, deemed awards labeled alimony in gross or divisions of property to be, in substance, periodic alimony. See, e.g., Wikle, 297 So. 3d at 1263. The most recent and on-point example is Rose v. Rose, 70 So. 3d 429, 431 (Ala. Civ. App. 2011).

> "In Rose, this court was called on to determine whether the parties' divorce judgment [entered in 1993] providing the former wife a share of the former husband's military-retirement benefits constituted an award of an unmodifiable division of marital property or whether it was a source of periodic alimony. The divorce judgment, which incorporated an agreement of the parties, provided for the division of 'assets' identified by the parties, including the former husband's military-retirement benefits. The judgment referred to the division of those assets as a 'property settlement.' Rose, 70 So. 3d at 431. The judgment stated that the former wife would receive 50% of the former husband's retirement benefits, including any cost-of-living allowances. It went on to say, however, that the former wife's entitlement to those benefits would terminate if she were to remarry or die. Id. …
>
> "The Defense Finance and Accounting Service ('DFAS'), the agency responsible for issuing military-retirement

12

benefits, issued the former wife's portion of the payments directly to her. …

"… [W]e determined that the former wife's award of a share of the former husband's military-retirement benefits constituted an award of periodic alimony that was judicially modifiable."

Spuhl, 99 So. 3d at 341-42 (emphasis added).

In Rose, this court rejected the former wife's argument that the case "f[ell] in line" with Stockbridge v. Reeves, 640 So. 2d 947, 947 (Ala. Civ. App. 1994), and Singleton v. Harp, 689 So. 2d 880 (Ala. Civ. App. 1996), cases in which this court held that the awards of retirement benefits were "property settlements" and not periodic alimony. In Stockbridge,

"the pertinent provision provide[d] that '[p]ayment to the wife shall terminate upon the husband's death, the wife's death, or upon the termination of the military retirement pension income benefits for whatever reason beyond the husband's control.' … This provision d[id] not provide that the payments are to cease upon the remarriage of the wife. Further, … there [wa]s a complete absence of the word 'alimony' in this provision. However, this particular provision is the first paragraph under the heading entitled 'Property Settlement.'"

640 So. 2d at 948 (emphasis omitted; emphasis added). Likewise, in Singleton,

"the pertinent provision provide[d] that the payments to the wife shall 'continue each and every month ... until the death of either party, whichever shall sooner occur.' As in

13

> Stockbridge, this provision d[id] not provide that the payments to the wife shall terminate upon her remarriage. It also lack[ed] any reference to 'alimony.' The terms of this provision [we]re 'certain, clear, and unambiguous, and susceptible to only one reasonable interpretation.' Vainrib [v. Downey, 565 So. 2d 647, 648 (Ala. Civ. App. 1990)]. We acknowledge[d] that the pertinent provision of the settlement agreement d[id] not appear in the section entitled 'Property Settlement.'"

689 So. 2d at 882 (emphasis added). Therefore, this court reasoned in Rose that "[Stockbridge and Singleton] are significantly distinguishable from this case because the award of a portion of the military-retirement benefits in each of those cases were not contingent on whether the recipient spouse remarried." 70 So. 3d at 43 n.2.

In Brunner v. Ormsby, 10 So. 3d 18 (Ala. Civ. App. 2008), this court held that an alimony award was alimony in gross and not periodic alimony because it did not terminate upon the remarriage of the recipient spouse. In Brunner, this court explained:

> "[The appellant] cites Hughes v. Hughes, 703 So. 2d 352 (Ala. Civ. App. 1996), in support of his argument [that the award is periodic alimony]. We, however, find Hughes easily distinguishable from the present case. In Hughes, the agreement at issue specifically designated the alimony as 'periodic alimony' and provided for termination of that alimony obligation upon the payee spouse's death or remarriage. On the other hand, in the present case, the agreement specifically designated the alimony as 'alimony in

gross' and did not contain a clause providing for termination of the obligation upon the remarriage of the former wife.

We find the alimony provision in this case to be analogous to the one in Stockbridge [v. Reeves, 640 So. 2d 947 (Ala. Civ. App. 1994)]."

Id. at 23.

Likewise, in this case, neither the divorce judgment nor the DRO stated that the payment of retirement benefits to the former wife would terminate upon her cohabitation or remarriage. Because of the absence of such a provision, this case is not analogous to Rose but, instead, falls in line with Stockbridge, Singleton, and Brunner. The substance of this award aligns with the trial court's characterization of it as a property division. See Ala. Code 1975, § 30-2-55 (providing that awards of periodic alimony terminate upon the remarriage of the recipient spouse).

Moreover, although not determinative, it is notable that this award does not comply with the provisions of Ala. Code 1975, § 30-2-57, which apply to awards of periodic alimony.[2] Under § 30-2-57, an award of

---

[2]Ala. Code 1975, § 30-2-57, was not in effect when Rose v. Rose, 70 So. 3d 429 (Ala. Civ. App. 2011), Brunner v. Ormsby, 10 So. 3d 18 (Ala. Civ. App. 2008), Stockbridge v. Reeves, 640 So. 2d 947 (Ala. Civ. App. 1994), and Singleton v. Harp, 689 So. 2d 880 (Ala. Civ. App. 1996) were decided.

15

periodic or rehabilitative alimony must be accompanied by express findings that the recipient spouse lacks a sufficient separate estate to maintain the economic status quo of the marriage; that the payor spouse can afford to pay the alimony; and that the award is equitable in light of the circumstances of the case. The judgment in this case lacks any of those findings.

The former husband also argues that the award of a portion of his retirement benefits does not satisfy the requirements to be classified as alimony in gross, i.e., (1) that the right to the alimony award is vested in the recipient spouse, (2) that the time of payment and the amount is certain, and (3) that the award is payable out of the present estate of the paying spouse as it exists at the time of the divorce. Cheek, 500 So. 2d at 18; Hager, 293 Ala. at 55, 299 So. 2d at 750.

Specifically, the former husband argues that, because the award terminates upon the death of the former wife, it is "indefinite" as to "when the award will completely vest." The DRO stated that "[a]ny right to payment under this [DRO] will cease upon the death of the [former wife]." In Hager v. Hager, 293 Ala. at 54, 299 So. 2d at 750, our supreme court overruled a decision by this court that had found that an award could not

be "vested" because it terminated on the death of the recipient spouse. The supreme court explained, "[w]e have found no case which holds that the unmodifiable character of 'alimony in gross' is changed by a clause that terminates the installments in case of the [recipient spouse's] death." 293 Ala. at 54, 299 So. 2d at 750. Moreover, the supreme court reasoned that "the term 'vested' simply signifies that an award of 'alimony in gross' is not subject to modification." Id. The court explained:

> "It was in this context that the term 'vested' appears to have originated, as it applies to alimony. If a decree did not reserve control, an award was deemed 'vested' because it was not subject to modification. If the husband died, the wife's right to the payments did not terminate but continued as a liability of the deceased husband's estate. Smith v. Rogers, supra; See also LeMaistre v. Baker, 268 Ala. 295, 105 So. 2d 867 (1958). If a decree did reserve control, even an award in gross, computed on the value of the wife's inchoate rights in her husband's estate, was modifiable up until the time an installment became due. Hence, such an award was not deemed 'vested' and was subject to termination on the death of the husband."

293 Ala. at 52, 299 So. 2d at 747. In other words, a provision terminating alimony upon the death of the recipient spouse cannot prevent an award from being "vested"; the issue is whether the trial court reserved jurisdiction to modify the award. The right to receive an alimony award is "vested" in the recipient spouse when the trial court indicates its intent

17

for the award to be unmodifiable by not reserving jurisdiction to modify that award.

With that understanding of "vesting," this court found in Brunner that an award that terminated upon the death of either spouse, but did not terminate upon remarriage, was a vested award of alimony in gross. Likewise, in Stockbridge and Singleton, discussed above, this court found that the awards of retirement benefits at issue, which both terminated upon the death of either spouse, were nonetheless "property settlements." 640 So. 2d at 948; 689 So. 2d at 882 (noting that the awards did not terminate upon remarriage). Finally, in Trammell v. Trammell, 523 So. 2d 437, 439 (Ala. Civ. App. 1988), this court found that the award of retirement benefits was not vested; however, we note that there were other significant factors in that case, aside from the fact that the award terminated upon the death of either spouse, that contributed to that finding. In Trammell, "[t]he decree specifically refer[red] to the award as periodic and provide[d] for the shortening of the payment period in the event of death of either spouse." Id. Those factors are not present in this case. See Lacey v. Lacey, 126 So. 3d 1029, 1034 (Ala. Civ. App. 2013)

18

(distinguishing <u>Trammell</u> on the basis that "[t]hose other factors are not present in this case").

Here, in the judgment and the DRO, the trial court retained jurisdiction to enter future orders in this case. Based on those provisions, the former husband argues that the award was intended to be modifiable and was therefore not vested. We disagree. The trial court did not retain jurisdiction to modify the award; it expressly retained jurisdiction only "to maintain legal Status of th[e] Order," "to enforce, secure and sustain the benefits awarded to the [former wife]," and "to give effect to the terms of [the award]." Those provisions do not contradict the trial court's intent, which is clear from the rest of the judgment, to divide the retirement benefits as an asset of the marriage. <u>See</u>, <u>e.g.</u>, <u>TenEyck v. TenEyck</u>, 885 So. 2d 146, 153 (Ala. Civ. App. 2003) (finding that "[t]he reservation of jurisdiction [in the divorce judgment] d[id] not prevent the award from being vested, as it reserve[d] to the trial court the right to change the amount of the monthly payments and not the amount of the entire award. The wife's entitlement to the $500,000 [wa]s made clear from the context of the award.")

Moreover, the divorce judgment in this case stated that

> "[t]he [former wife] is named as the survivor beneficiary under the [former husband's] retirement benefit with TVA and the parties represented that said designation is irrevocable. No steps shall be taken in an attempt to modify or change this beneficiary designation to the [former wife] or to remove from her the protection of receipt of this benefit after the [former husband's] death."

With that provision, the former wife argues, the trial court actually "t[ook] steps to ensure that [the former wife's] benefits w[ould] continue, after death of the former [h]usband, in that it directed [her] to continue to be listed as irrevocable survivor beneficiary under the terms of the plan" and "thereby distinguish[ed] it from periodic alimony awards." We agree.

This court made a similar finding in Lacey v. Lacey, 126 So. 3d 1029, 1033 (Ala. Civ. App. 2013). In Lacey, the alimony award terminated upon the death of either spouse, but "[t]he obligation remain[ed] in force upon the death of the husband, and it [wa]s secured not only by property within the husband's estate but also, in the event of the husband's death, by a life-insurance policy." 126 So. 3d at 1033. Thus, this court found that the award was an award of alimony in gross, and not periodic alimony, because it "contraven[ed] … the general law that an award of periodic alimony is terminable at the death of either

spouse <u>and</u> that it is terminable upon the cohabitation or remarriage of the recipient spouse. <u>See</u> § 30-2-55, Ala. Code 1975." <u>Id.</u> at 1033-34. Likewise, here, the fact that the trial court made provisions for the former wife after the death of the former husband indicates its intent for the award to be an unmodifiable, vested award of alimony in gross.

The former husband argues that, because the award only terminates upon the death of the former wife, the amount of the award and the duration of the payments is uncertain. <u>See</u> <u>Cheek</u>, 500 So. 2d at 18 (holding that, for an award to constitute alimony in gross, "the time of payment and the amount must be certain"). However, this court has not applied those requirements so stringently.

For example, in <u>Brunner</u>, the alimony award to the former wife provided for the payment of $2,000 per month until the death of either party, "or when the former husband is no longer a full-time active circuit judge." 10 So. 3d at 23. Harry Brunner argued in that case that because of the termination clauses, "the determination of an exact amount of alimony [wa]s impossible, and, therefore, 'the alimony provision [wa]s legally incapable of being alimony in gross.'" 10 So. 3d at 23. Brunner cited <u>Hughes v. Hughes</u>, 703 So. 2d 352 (Ala. Civ. App. 1996); however,

21

as previously discussed, this court found <u>Hughes</u> "easily distinguishable." <u>Id.</u> In particular, this court noted that the judgment in <u>Hughes</u> "provided for termination of that alimony obligation upon the payee spouse's death or remarriage," whereas the award in <u>Brunner</u> did not. <u>Id.</u> This court analogized <u>Brunner</u> instead to <u>Stockbridge v. Reeves</u>, in which this court found that the award was a property settlement, not periodic alimony. <u>Id.</u> at 23-24. Notably, the award in <u>Stockbridge</u> was "the full amount of the disposable military retirement pension income of the husband, including any increases for whatever reason," until the death of either party. 640 So. 2d at 947. Similarly, the duration of the payments under the award in <u>Singleton</u> was terminated by the death of the parties, and this court found that the award in that case was a property settlement, nonetheless. 689 So. 2d at 881.

Likewise, here, although the award terminates upon the death of either party, it vests in the former wife a right to receive a fixed amount per month ($2,900) of the former husband's retirement benefits, "with applicable cost of living adjustments" to which the former husband is entitled. It is therefore properly classified as an award of alimony in gross. In contrast, in <u>Rose</u>, the judgment awarded the former wife 50%

of the former husband's retirement benefits, including one-half of any cost-of-living allowances he received, until her death <u>or remarriage</u>. 70 So. 3d at 431. This court found that the award in that case was periodic alimony "because both the time at which the former wife's award will completely vest and the total amount the former wife will receive [we]re <u>indefinite</u>" and this court specifically distinguished it from <u>Stockbridge</u> and <u>Singleton</u> based on the fact that it terminated upon the recipient spouse's remarriage. <u>See</u> <u>id.</u> at 434 n.2.

Moreover, we also note that the outcome sought by the former husband is impracticable. We cannot hold that the award in this case cannot be deemed alimony in gross due to the fact that it is not certain in time or amount (or that it is not vested) because the retirement payments are an annuity limited by the death of the retiree, rather than by a total sum. That characteristic is common among many retirement plans and is outside of the ability of a trial court to change. Thus, such a holding from us would make it impossible for a trial court to divide such retirement benefits as property or award them as alimony in gross. We have clearly stated in the past that trial courts have discretion to treat retirement benefits <u>either</u> as a source of periodic alimony <u>or</u> as a marital

asset subject to division. See Spuhl, 99 So. 3d at 342. Applying the alimony in gross requirements too strictly in this case would erode that discretion.

The former husband also argues that the fact that he "was drawing his retirement benefits at the time of divorce in 2021 and that he began drawing his benefits in 2008 is sufficient to establish that such benefits constituted a source of current income." See Rose, 70 So. 3d at 433 ("Evidence that a person has begun drawing retirement-benefits from his or her account has been held sufficient to establish that such benefits constitute a source of current income.") Periodic alimony is paid out of the "current earnings" of the payor spouse, whereas alimony in gross must be "payable out of the present estate of the paying spouse as that estate exists at the time of the divorce." Hager, 293 Ala. at 55, 299 So. 2d at 750.

Although it is true that a trial court may treat retirement benefits as a source of current income in awarding periodic alimony, it is not true that the fact that retirement benefits are being currently drawn at the time of the divorce limits the trial court to only awarding those benefits as periodic alimony. To the contrary, this court has expressly held that

24

a court may treat retirement benefits, even though they are currently being drawn, as part of a spouse's present estate. Spuhl v. Spuhl, 99 So. 3d 339, 341 (Ala. Civ. App. 2012).

In Spuhl, this court held that the trial court erred in awarding retirement benefits as periodic alimony because it did so on the false assumption that, after Rose, that was its only option:

> "In discussions with the attorneys during the trial, the trial court said that 'there's a recent case that said if a military -- if the husband is already retired, any award I make to [the wife] from that retirement is in the nature of alimony which is subject to [§ ]30-2-55[, Ala. Code 1975]. …' In their briefs to this court, the parties both represent to this court that the 'recent case' to which the trial court was referring was Rose[ v. Rose, 70 So. 3d 429 (Ala. Civ. App. 2011).] It appears that the trial court read Rose as prohibiting treating military-retirement benefits as a marital asset subject to division and as providing that such benefits could be awarded only as periodic alimony. The trial court has read Rose too narrowly."

99 So. 3d at 342 (emphasis added). In Rose, this court merely found that it was permissible for the trial court to treat the former husband's benefits as "a source of income for payment of a periodic-alimony award" because "payments [we]re currently being issued from the former husband's retirement account." 70 So. 3d at 433 (citing Yohey v. Yohey, 890 So. 2d 160, 168 (Ala. Civ. App. 2004) (holding that a trial court had acted properly in requiring a payor spouse to treat his retirement account

25

as a source from which to pay periodic alimony because the trial court could have concluded that he had used those drawn benefits as current income to pay for general living expenses); Stamm v. Stamm, 922 So. 2d 920, 923 (Ala. Civ. App. 2004) (holding that, upon admission by a payor spouse that he had been drawing benefits, the trial court could have properly inferred that he had drawn benefits to pay for general living expenses and therefore treated those benefits as a source of income for payment of periodic alimony).

The fact that the former husband in this case was receiving the retirement benefits at the time of the divorce did not establish that those benefits were required to be considered as his current income and were only divisible as periodic alimony. The trial court was free to treat the retirement benefits as a part of the former husband's present estate and to award them as alimony in gross. Therefore, we do not find the former husband's argument on this point persuasive.

Conclusion

Based on the foregoing, we affirm the trial court's judgment finding that the award was an unmodifiable division of property and dismissing

26

for lack of subject-matter jurisdiction the former husband's petition to modify the award.[3]

The former wife's request for an attorney fee on appeal is denied.

AFFIRMED

Moore, P.J., and Edwards, Hanson, and Fridy, JJ., concur.

---

[3]Because we find that the award was unmodifiable, and thus affirm the trial court's finding that it lacked jurisdiction to modify the award, we pretermit a discussion of whether there were grounds for modification of the award under Ala. Code 1975, § 30-2-55.